# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ABITIBIBOWATER INC., et al.,[1] | ) Case No. 09-11296 (KJC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Ref. Docket No. 340, 491** |
| | ) **Objection Deadline: March 8, 2010 at 4:00 p.m. (ET)** |

## NOTICE OF DE MINIMIS ASSET SALE

**PLEASE TAKE NOTICE** that, on May 29, 2009, Bowater Incorporated (the "Seller") and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") filed the *Debtors' Motion for an Order Establishing Procedures for the Sale or Abandonment of De Minimis Assets Free and Clear of All Liens, Claims and Encumbrances Pursuant to Sections 105, 363, and 554 of the Bankruptcy Code* [Docket No. 340] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that, on June 15, 2009, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order Establishing Procedures for the Sale or Abandonment of De Minimis Assets Free and Clear of Liens, Claims and Encumbrances Pursuant to Sections 105, 363, and 554 of the Bankruptcy Code* [Docket No. 491] (the "Order"),[2] which granted the relief in the Motion. Pursuant to the Order, the Debtors are authorized to sell Miscellaneous Assets (as defined in the Order) free and clear of all liens, claims and encumbrances.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Order, the Seller is hereby giving notice to those parties entitled to notice (the "Notice Parties") of the following proposed sale of certain Miscellaneous Assets (the "Sale") as follows:

---

[1] The debtors-in-possession in these cases, along with the last four digits of each Debtor's federal or Canadian tax identification number, are: AbitibiBowater Inc. (6415), AbitibiBowater US Holding 1 Corp. (6050), AbitibiBowater US Holding LLC (N/A), AbitibiBowater Canada Inc. (3225), Abitibi-Consolidated Alabama Corporation (4396), Abitibi-Consolidated Corporation (9050), Abitibi-Consolidated Finance LP (4528), Abitibi Consolidated Sales Corporation (7144), Alabama River Newsprint Company (7247), Augusta Woodlands, LLC (0999), Bowater Alabama LLC (7106), Bowater America Inc. (8645), Bowater Canada Finance Corporation (8810), Bowater Canadian Forest Products Inc. (2010), Bowater Canadian Holdings Incorporated (6828), Bowater Canadian Limited (7373), Bowater Finance Company Inc. (1715), Bowater Finance II LLC (7886), Bowater Incorporated (1803), Bowater LaHave Corporation (5722), Bowater Maritimes Inc. (5684), Bowater Newsprint South LLC (1947), Bowater Newsprint South Operations LLC (0186), Bowater Nuway Inc. (8073), Bowater Nuway Mid-States Inc. (8290), Bowater South American Holdings Incorporated (N/A), Bowater Ventures Inc. (8343), Catawba Property Holdings, LLC (N/A), Coosa Pines Golf Club Holdings LLC (8702), Donohue Corp. (9051), Lake Superior Forest Products Inc. (9305) and Tenex Data Inc. (5913). The corporate headquarters of the debtors-in-possession is located at, and the mailing address for each debtor-in-possession is, 1155 Metcalfe Street, Suite 800, Montreal, Quebec H3B 5H2, Canada.

[2] Capitalized terms not defined herein shall have the meanings provided to them in the Motion or Order.

(a) **Description of the Miscellaneous Assets:** Approximately 3.98 acres of property located in Rhea County, Tennessee. A copy of the proposed sale contract is attached hereto as Exhibit A.

(b) **Aggregate Purchase Price:** $369,500

(c) **Seller:** Bowater Inc.

(d) **Purchaser:** Mark Whitlock

The purchaser is in no way affiliated with the Debtors or any of their subsidiaries or affiliates.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Order, any recipient of this notice may object to the proposed sale within ten (10) business days of service of this notice by filing a written objection with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801.

**If a written objection is filed with the Court within such ten (10) business day period and cannot be resolved, the relevant Miscellaneous Assets shall only be sold, transferred or abandoned upon further order of the Court or resolution of the objection by the parties.**

Dated: Wilmington, Delaware  YOUNG CONAWAY STARGATT & TAYLOR, LLP
February 22, 2010

*/s/ Sean T. Greecher*
Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Kelley A. Cornish
Jeffrey D. Saferstein
Claudia R. Tobler
Samantha G. Amdursky
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel for the Debtors and Debtors-in-Possession*

# **Exhibit A**

DB02:8503745.6    068104.1001

Bowater Tract No.: Sdw-1171 & 1225         Tennessee
(11-3-98)   Block: Spring City Woodyard

# LAND SALE CONTRACT

THIS AGREEMENT, made this 20 day of August, 2009, between BOWATER INCORPORATED (successor by mergers and name changes to Hiwassee Land Company), a Delaware corporation with offices in Calhoun, Tennessee, its successors and assigns, herein called "Owner," and **Mark Whitlock** of **P.O. Box 36, Ten Mile, TN 37880,** their heirs, representatives, successors or assigns, herein called "Purchaser."

WITNESSETH THAT: Owner agrees to sell and Purchaser agrees to buy in fee simple all the following described property situated in **Rhea** County, Tennessee, containing **3.98** acres, more or less, and being all of the property described in deed from Homer Gray to Owner recorded in Book 88, page 191, and part of the property described in deed from United States of America to Owner recorded in Book 90, page 148, both in the Office of the Register of Deeds of Rhea County, Tennessee, and more fully described as follows:

**See Exhibit "A"**

1. The purchase price is **Three Hundred sixty-nine thousand, five hundred and 00/100 ($369,500.00) Dollars**, of which **Thirty-six thousand and 00/100 ($36,000.00) Dollars**, hereinafter referred to as the "deposit," has been paid by Purchaser to Owner on the signing hereof, receipt whereof is hereby acknowledged, and the balance of **Three hundred thirty-three thousand, five hundred and 00/100 ($333,500.00) Dollars** is to be paid in cash on delivery of deed or deeds as hereinafter provided.

2. Owner will convey good title to all of the above described property, deed or deeds to be in proper form with usual full covenants and warranties.

3. Titles are subject to prompt examination at Purchaser's cost and expense. Purchaser will notify Owner of any objections or defects relative to said titles. Owner may cooperate in curing objections or defects but shall not be obligated to cure any objections or defects in said titles. Purchaser's sole remedy for Owner's failure to cure any objections or defects or any failure by Owner to deliver good deeds for marketable title shall be to accept said deed titles "as is" or to declare this contract void and receive the full refund of any deposit.

4. Any title insurance on the above described property shall be secured at Purchaser's sole cost and expense.

5. Purchaser shall be responsible for preparation of all closing documents and the deed conveying the property and rights covered by this contract, at Purchaser's sole cost and expense. Subject to review and approval by owner and its attorney.

6. The purchase shall be closed within **60 days**, after the **full approval by the United States Bankruptcy Court for the District of Delaware,** of this contract, at a time and place in County where land lies designated by Purchaser.

7. Taxes shall be prorated based on the most current tax information as of date of closing with Purchaser withholding from purchase price amount payable by Owner and paying taxes when due. Greenbelt rollback taxes or rollback taxes or increased taxes based on any change of use or withdrawal from any special use category occurring subsequent to closing shall be the responsibility of Purchaser.

8. Transfer taxes, documentary stamps, recordation taxes, state conveyance taxes or deed taxes shall be paid or provided for deed or deeds by Purchaser in amount required by law.

9. No trees on above property shall be cut from this day until sale is closed.

10. In event of substantial damage to timber, improvements or land by fire or other causes before purchase is closed then, by agreement between Owner and Purchaser, the purchase price may be adjusted proportionately or Purchaser may declare this contract void and recover deposit.

11. The property will be sold SUBJECT TO all existing easements and rights of way for public roads and highways, public utilities, railroads, pipelines and riparian rights, if any, extending into, through, over, or across the above described property. SUBJECT ALSO TO any reservations of oil, gas, stone, minerals or mining rights reserved in prior deeds. SUBJECT FURTHER TO any covenants, restrictions or zoning, which may be applicable to the property.

12. Property covered by this contract is being sold by the tract or boundary and not by the acre.

13. Owner has not offered the property covered by this contract by or through any Realtor or real estate broker or sales agent and will not pay sales commission on the contracting for sale or closing of the sale of said property.

14. Special Provisions:
    1. This contract is contingent upon a satisfactory Phase I Environment Assessment. Purchaser will obtain and provide a copy of said Assessment to Seller and notify Seller of any objections or defects relative to said Phase I Assessment. Seller may cooperate in curing objections or defects but shall not be obligated to cure any objections or defects in said Assessment. Purchaser's sole remedy for Seller's failure to cure any objections to the defects shall be to accept said defects "as is" or to declare this contract void and receive the full refund of any deposit.
    2. Seller will assign the Lease with "Timber Processers, LLC" to Purchaser at closing and with lease payments being prorated as of the date of closing.

15. Bowater filed a Voluntary Petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Delaware on April 16, 2009. This Land Sale Contract is SUBJECT TO the approval of the United States Bankruptcy Court for the District of Delaware.

16. This contract constitutes the entire agreement between the parties. No representations, warranties, or promises not expressly referred to herein nor any waivers or modifications not in writing and duly signed by Owner at its home office in Calhoun, Georgia, shall be binding.

IN WITNESS WHEREOF Bowater Incorporated has caused these presents to be signed, sealed, and delivered the day and year first above written.

STATE OF TENNESSEE
COUNTY OF McMINN

Signed, sealed and delivered by )
Bowater Incorporated in the )
presence of: )
)
_____ )
Witness )

_____ )
Daniel A. Eaton )
Notary Public )
My commission expires: 05/19/10 )

BOWATER INCORPORATED

By: _____
Kent Cumberton
U. S. Wood Products Director

STATE OF TENNESSEE
COUNTY OF Meigs

Signed, sealed and delivered )
in the presence of: )
)
)
_____ )
Witness )

_____
Amber Elizabeth Ludwig
Notary Public
My commission expires: June 26, 2011

Jeremy Bivens

Amber Elizabeth Ludwig 8/20/09

My Comm. Exp. June 26, 2011

- 3 -

# EXHIBIT "A"

All those tracts or parcels of land lying and being in the 2nd Civil District of Rhea County, Tennessee, forming one contiguous tract of land containing 3.98 acres, more or less, and being more fully described as follows:

Sdw-1171

All that tract or parcel of land lying and being in the 2nd Civil District of Rhea County, Tennessee conveyed by Homer Gray to Hiwassee Land Company by deed dated July 3, 1957, recorded in Deed Book 88, page 191 in the Office of the Register of Deeds for Rhea County, Tennessee and being more fully described as follows:

TRACT ONE: Beginning at TVA Marker No. 138-5-13; thence North fifty (50) degrees thirty (30) minutes West one hundred twenty-eight (128) feet to a stake; thence North forty-three (43) degrees East four hundred ninety-two (492) feet to a cherry stump in Homer Gray's outside line; thence with his outside line South seventy (70) degrees East one hundred thirty-six (136) feet to TVA Marker No. 595-5-14; thence with TVA line South forty-two (42) degrees thirty-five (35) minutes West five hundred nineteen (519) feet to the Beginning, containing one and fifty-six hundredths (1.56) acres, more or less.

TRACT TWO: Beginning at a stake, the southeast corner of Homer Gray's property, said stake standing North twenty-one (21) degrees fifty-seven (57) minutes East thirty-four and five-tenths (34.5) feet from TVA Marker No. 138-5-12; thence with road right of way North sixty-two (62) degrees West forty-five and five-tenths (45.5) feet; thence leaving road North sixty-nine (69) degrees East sixty-one (61) feet to a stake on the TVA line; thence with TVA line South twenty-one (21) degrees fifty-seven (57) minutes West forty-four (44) feet to the Beginning, containing two hundredths (.02) acre.

Sdw-1225

All that tract of parcel of land lying and being in the 2nd Civil District of Rhea County, Tennessee conveyed by the United States of America to East Highlands Company by deed dated July 16, 1958, recorded in Deed Book 90, page 148 in the Office of the Register of Deeds for Rhea County, Tennessee and being more fully described as follows:

A tract of land lying in the Second Civil District of Rhea County, Tennessee, on the northwest shore of the Wolf Creek Embayment of Watts Bar Lake, approximately ¾ mile north of the Watts Bar Dam Access Road, and more particularly described as follows:

Beginning at US-TVA Monument 4-52 (Coordinates: N. 464,010; E. 2,340,310) in the boundary of the United States of America's land at a corner of the lands of the Harriet Garrison McClendon Heirs and James H. Chumley; thence South 66 degrees 54 minutes East 103 feet to a metal marker in the 750-foot contour on the shore of the Wolf Creek Embayment; thence with the 750-foot contour as it meanders in a southwesterly direction to a metal marker in the boundary of the United States of America's land; thence with the United States of America's

boundary line, leaving the contour, North 21 degrees 57 minutes East 211 feet to US-TVA Monument 5-13; thence North 42 degrees 35 minutes East 519 feet to US-TVA Monument 5-14; thence North 27 degrees 38 minutes East 846 feet, passing US-TVA Monument 4-49 at 217 feet, US-TVA Monument 4-50 at 419 feet, and US-TVA Monument 4-51 at 633 feet, to the point of beginning, and containing 3.4 acres, more or less.

LESS AND EXCEPT all that tract or parcel of land conveyed by East Highlands Company to Nelson Dodd, et al. by deed dated September 19, 1958, recorded in Deed Book __, page __, in the Office of the Register of Deeds for Rhea County, Tennessee and being more fully described as follows:

Beginning at US-TVA Monument 4-50; thence South 64 degrees East along a wire fence 100 feet, more or less, to a point in the 750 foot contour on the shore of Wolf Creek Embayment of Watts Bar Dam; thence with the 750-foot contour as it meanders in a Northeasterly direction to a metal marker in the 750-foot contour; thence North 66 degrees 54 minutes West with a marked line 103 feet to US-TVA Monument 4-52, being a corner common to Chumley and McClendon heirs; thence South 27 degrees 38 minutes West passing US-TVA Monument 4-51 at 213 feet, in all 427 feet to the Beginning, containing one (1) acre, more or less.

SUBJECT to all reservations, covenants, easements, rights, privileges and restrictions described and set forth in the deed from the United States of America to East Highlands Company recorded in Deed Book 90, page 148 in the Office of the Register of Deeds for Rhea County, Tennessee.

TOGETHER WITH a 25-foot easement for ingress, egress and utilities conveyed by Homer Gray to Hiwassee Land Company by Deed dated January 14, 1954, recorded in Deed Book 83, page 72, in the Office of the Register of Deeds for Rhea County, Tennessee more fully described as follows:

Beginning on the eastern line of the public road, being the rural route road from Spring City to the Watts Bar steam plant, at its intersection with the southern line of the Homer Gray tract, which point is also in the northern line of the Newell T. Porter tract of land; thence Eastwardly, along the southern line of said Homer Gray tract, to its intersection with the southwestern line of the old County road, now known as the T.V.A. Road; thence along said road Northwestwardly to a point located twenty-five (25) feet Northwardly of the south line of the said Gray tract, if measured at right angles thereto; thence Westwardly, on a line parallel to and twenty-five (25) feet Northwardly of the southern line of said Gray tract, to the eastern line of said rural road; thence Southwardly, along the eastern line of said rural route road, twenty-five (25) feet, more or less, to the point of beginning.

All references in the above described property to corners, roads and lands of third parties are hereby made "now or formerly".