IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ABITIBIBOWATER INC., *et al.*,[1] | ) ) | Case No. 09-11296 (KJC) Jointly Administered |
| | ) | |
| Debtors. | ) ) ) | Hearing Date: August 4, 2010 at 1:00 p.m. (ET) Objection Deadline: July 28, 2010 at 4:00 p.m. (ET) |

## DEBTORS' MOTION FOR AN ORDER DIRECTING THE RELEASE OF CERTAIN TRUST ASSETS TO THE DEBTORS PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF

AbitibiBowater Inc. ("AbitibiBowater") and its affiliated debtors and debtors-in-possession in the above-captioned cases (each a "Debtor," and collectively, the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion") this Court for entry of an order substantially in the form attached hereto as Exhibit A (the "Order") pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") directing the trustee of Bowater Inc.'s ("Bowater's") non-qualified compensation plan trust to release certain trust assets to Bowater in accordance with the terms of the trust, and grant any related relief this

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number or Canadian tax identification number, are: AbitibiBowater Inc. (6415), AbitibiBowater US Holding 1 Corp. (6050), AbitibiBowater US Holding LLC (N/A), AbitibiBowater Canada Inc. (3225), Abitibi-Consolidated Alabama Corporation (4396), Abitibi-Consolidated Corporation (9050), Abitibi-Consolidated Finance LP (4528), Abitibi Consolidated Sales Corporation (7144), Alabama River Newsprint Company (7247), Augusta Woodlands, LLC (0999), Bowater Alabama LLC (7106), Bowater America Inc. (8645), Bowater Canada Finance Corporation (8810), Bowater Canadian Forest Products Inc. (2010), Bowater Canadian Holdings Incorporated (6828), Bowater Canadian Limited (7373), Bowater Finance Company Inc. (1715), Bowater Finance II LLC (7886), Bowater Incorporated (1803), Bowater LaHave Corporation (5722), Bowater Maritimes Inc. (5684), Bowater Newsprint South LLC (1947), Bowater Newsprint South Operations LLC (0186), Bowater Nuway Inc. (8073), Bowater Nuway Mid-States Inc. (8290), Bowater South American Holdings Incorporated (N/A), Bowater Ventures Inc. (8343), Catawba Property Holdings, LLC (N/A), Coosa Pines Golf Club Holdings LLC (8702), Donohue Corp. (9051), Lake Superior Forest Products Inc. (9305) and Tenex Data Inc. (5913). On December 21, 2009, ABH LLC 1 (2280) and ABH Holding Company LLC (2398) (the "SPV Debtors") commenced chapter 11 cases, which cases are jointly administered with the above-captioned Debtors. The Debtors' and SPV Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1155 Metcalfe Street, Suite 800, Montreal, Quebec H3B 5H2, Canada.

Court deems appropriate. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to hear this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9014.

## BACKGROUND

3. AbitibiBowater (together with its subsidiaries and affiliates, the "Company") is incorporated in Delaware and headquartered in Montreal, Quebec. The Company is the world's largest producer of newsprint by capacity and one of the largest publicly traded pulp and paper manufacturers worldwide. It produces an extensive range of commercial printing papers, market pulp and wood products, serving customers in over 90 countries. The Company is also among the world's largest recyclers of newspapers and magazines, and has third-party certified 100% of its managed woodlands to sustainable forest management standards. As of March 31, 2010, excluding facilities permanently closed as of that date, the Company owned or operated 23 pulp and paper facilities located in the United States, Canada and South Korea and 26 wood products facilities in Canada. Employing around 11,900 people, the Company realized sales of approximately $4.4 billion[2] in 2009. Its total assets were $7.0 billion as of March 31, 2010.

---

[2] All monetary figures are presented in U.S. dollars unless specifically noted otherwise.

4.  The Company's financial performance depends primarily on the market demand for its products and the prices at which they can be sold.  These products are globally traded commodities, and as such, the balance between supply and demand drives their pricing and shipment levels.  Supply and demand, in turn, are affected by global economic conditions, changes in consumption and capacity, the level of customer and producer inventories and fluctuations in currency exchange rates.  The recent downturn in the global economy has resulted in an unprecedented decline in demand for newsprint, the Company's primary product. In addition, substantial price competition and volatility in the forest products industry, along with negative trends in advertising, electronic data transmission and storage and continued expansion of the Internet, have exacerbated downward pressure on revenue.  At the same time, the global credit markets suffered a significant contraction, including the failure of some large financial institutions, which has resulted in a severe decline in the credit markets and overall availability of credit.  These market disruptions, as well as the Company's high debt levels and the overall weakness in consumer demand, have adversely impacted the Company's financial performance and necessitated the commencement of these Chapter 11 Cases and coordinated Canadian filings.

5.  Specifically, on April 16, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  On April 17, 2009, certain of the Debtors (the "Cross-Border Debtors")[3] and non-debtor subsidiaries of AbitibiBowater (the "CCAA Debtors" and together with the Cross-Border Debtors, the "Canadian Debtors")[4] applied for protection from their creditors under Canada's

---

[3]  The Cross-Border Debtors are:  Bowater Canada Finance Corporation, Bowater Canadian Holdings Incorporated, AbitibiBowater Canada Inc., Bowater Canadian Forest Products Inc., Bowater Maritimes Inc., Bowater LaHave Corporation and Bowater Canadian Limited.

[4]  The CCAA Debtors are:  Bowater Mitis Inc., Bowater Guerette Inc., Bowater Couturier Inc., Alliance Forest Products (2001) Inc., Bowater Belledune Sawmill Inc., St. Maurice River Drive Company, Bowater Treated Wood Inc., Canexel Hardboard Inc., 9068-9050 Quebec Inc., Bowater Canada Treasury Corporation, Bowater

Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended (the "CCAA"), in the Superior Court, Commercial Division, for the Judicial District of Montreal, Canada (the "Canadian Court" and the filing, the "Canadian Proceeding"). Two of the CCAA Debtors -- ACI and ACCC -- thereafter filed petitions for recognition under chapter 15 of the Bankruptcy Code. AbitibiBowater and certain of the Debtors also filed for ancillary relief in Canada seeking provisional relief in support of the Chapter 11 Cases in Canada under the Canadian equivalent of chapter 15, section 18.6 of the CCAA.[5]

6. On April 28, 2009, the Office of the United States Trustee for the District of Delaware appointed a statutory committee of unsecured creditors (the "Committee") in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

7. The Company's ability to reorganize depends on the comprehensive reorganization of its businesses in Canada and the United States. The Debtors' and the CCAA Debtors' interests are united in their integrated, co-dependent business relationship. The Debtors and the CCAA Debtors have therefore committed to engage in a joint and harmonious restructuring in both jurisdictions in an effort to maximize value for the benefit of the Company's collective stakeholders.

---

Canada Finance Limited Partnership, Bowater Shelburne Corporation, 3231078 Nova Scotia Company, Bowater Pulp and Paper Canada Holdings Limited Partnership, Abitibi-Consolidated Inc., Abitibi-Consolidated Company of Canada, Abitibi-Consolidated Nova Scotia Incorporated, 32117925 Nova Scotia Company, Terra-Nova Explorations Ltd., The Jonquiere Pulp Company, The International Bridge and Terminal Company, Scramble Mining Limited, 9150-3383 Quebec Inc., Star Lake Hydro Partnership, Saguenay Forest Products Inc., 3224112 Nova Scotia Limited, La Tuque Forest Products Inc., Marketing Donohue Inc., Abitibi-Consolidated Canadian Office Products Holdings Inc., 3834328 Canada Inc., 6169678 Canada Incorporated, 4042410 Canada Inc., Donohue Recycling and 1508756 Ontario Inc.

[5] The Debtors who obtained section 18.6 relief are: AbitibiBowater Inc., AbitibiBowater US Holding 1 Corp., Bowater Ventures Inc., Bowater Incorporated, Bowater Nuway Inc., Bowater Nuway-Midstates, Inc., Catawba Property Holdings LLC, Bowater Finance Company Inc., Bowater South American Holdings Incorporated, Bowater America Inc., Lake Superior Forest Products Inc., Bowater Newsprint South LLC, Bowater Newsprint

# RELIEF REQUESTED

8. Bowater established three separate grantor trusts in connection with a variety of non-qualified compensation plans. Two of the trusts have no assets. The third trust (the "Trust") holds assets valued at approximately $41.8 million consisting of cash investments and insurance policies on the lives of certain current and former Bowater executives (valued on a death benefit basis). The Trust terms require that the trustee deliver the Trust's assets to Bowater upon Bowater's bankruptcy, as directed by a court of competent jurisdiction. Accordingly, the Debtors respectfully move this Court to obtain an order directing the trustee to release these assets to Bowater.

### A. The Trust and Underlying Plans

9. Bowater entered into the Amended and Restated Bowater Incorporated Benefit Plan Grantor Trust, Effective as of June 6, 2000 with Wachovia Bank, N.A. (the "Trustee") (the "Trust Agreement"). The Trust Agreement established a Trust, which, in the absence of bankruptcy, was structured to disperse funds to pay benefits (the "Benefits") to participants (the "Participants") under non-qualified compensation plans (the "Plans") covered by the Trust. A copy of the Benefit Plan Trust Agreement is attached hereto as Exhibit B. The Trust Agreement does not oblige Bowater to fund the Trust prior to a "change in control" of Bowater, and Bowater's funding of the Trust to date has been purely discretionary. *Trust Agreement* at § 12.1 and 12.2. In addition, Bowater has not used any of the Trust Assets to pay Plan benefits, but rather, has paid such benefits directly to Participants as they have come due.

10. The Trust Agreement covers the following three Plans: (i) the Bowater Incorporated Compensatory Benefits Plan, as Amended and Restated Effective February 26,

---

South Operations LLC, Bowater Finance II, LLC, Bowater Alabama LLC and Coosa Pines Golf Club Holdings LLC.

1999 and as subsequently amended (the "Compensatory Benefits Plan"), (ii) the Bowater Incorporated Benefits Equalization Plan, as Amended and Restated as of February 26, 1999 and as subsequently amended (the "Benefits Equalization Plan"), and (iii) the Supplemental Benefit Plan for Designated Employees of Bowater Incorporated and Affiliated Companies, as Amended and Restated Effective February 26, 1999 and as subsequently amended (the "Supplemental Benefit Plan"). A copy of the Compensatory Benefit Plan, the Benefits Equalization Plan and Supplemental Benefit Plan are attached hereto as Exhibits C, D and E respectively. A brief summary of the Plans follows:

    (a). *The Compensatory Benefit Plan.* This Plan consists of two separate plans, one of which is maintained solely for the purpose of providing benefits for employees in excess of the limitations on contributions imposed by Section 415 of the Internal Revenue Code of 1986 (the "Code") and one of which is maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.

    (b). *The Benefits Equalization Plan.* This Plan is maintained to provide benefits to a select group of management or highly compensated employees whose benefits under one or both of the Company's tax-qualified pension plans are limited by application of Section 415 and/or Section 401(a)(17) of the Code.

    (c). *The Supplemental Benefit Plan.* This Plan is maintained to provide an inducement to key employees of the Company and of selected affiliated companies to remain in the employment of such companies by providing retirement benefits supplemental to those available under the Company's basic tax-qualified benefit plans.

    11. The Plans are unfunded for purposes of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Code. *See Compensatory Benefits Plan* at § 11 ("The benefits payable under the Plan shall not be funded for purposes of the Code or ERISA but shall be payable out of the general funds of the Company or its Benefit Plan Grantor Trust"); *Benefits Equalization Plan* at § 20 ("The benefits payable under the Plan shall not be funded, but shall be payable out of the general funds of the Company when and as benefits become

payable."); *Supplemental Benefits Plan* at § 8.09 ("The Employer's obligations under this Plan shall be unfunded, and the Employer shall not be obligated under any circumstances to fund its obligations under this Plan."); *see also Trust Agreement* at § 14.1 ("Nothing in this agreement shall be construed to subject either the Trust or the Plans to ERISA other than Part 1 or 5 of Title I thereof").

12. The Trust, accordingly, was structured as a grantor trust (or so-called "rabbi trust") to preserve the unfunded nature of the Plans. As such, its assets remain subject to the claims of Bowater's creditors. *See Trust Agreement* at § 1.3. As this Court has noted:

> A rabbi trust is an irrevocable trust in which a trustee holds the deferred compensation funds out of the employer's reach, but still within the reach of the employer's creditors in the event of insolvency or bankruptcy. Therefore, a rabbi trust used in combination with an unfunded deferred compensation plan provides the employee with an additional measure of security without jeopardizing the plan's unfunded status. Accordingly, the Plan remains unfunded despite the use of a rabbi trust.

*In re New Century Holdings, Inc.*, 387 B.R. 95, 111 (Bankr. D. Del. 2008).

13. As a grantor or "rabbi trust," to maintain the unfunded nature of the Plans, the Trust Agreement expressly provides that,

> "when the Trustee is in receipt of a copy of a bankruptcy petition relating to the Company or a notification from the Company that it is insolvent, the Trustee will suspend payments to the participants and beneficiaries under the Trust and will hold assets of the Trust for the benefit of the Company's general creditors. Thereafter, the Trustee will deliver assets of the Trust to satisfy claims of the Company's general creditors as directed by a court of competent jurisdiction."

*See Trust Agreement* at § 3.3. Therefore, according to the terms of the Trust Agreement, Bowater's chapter 11 filing suspended the Trustee's ability to pay benefits to the Participants, and also rendered the Trust assets deliverable to Bowater. *See Trust Agreement* at § 3.3.

14. Because assets of a rabbi trust, by definition, belong to the company establishing the trust and revert to the company upon insolvency or bankruptcy, plan participants do not have a preferred claim to the trust assets. Here, the Trust Agreement expressly provides that the Participants have no preferred claim on, or any beneficial interest in, the Trust assets, and the rights of the Participants to their Benefits under the relevant Plan and its corresponding Trust do not exceed those of a general creditor of the Company. *See Trust Agreement* at § 11.1 ("The participants and beneficiaries have no beneficial ownership in or preferred claim on the assets of the Trust. Amounts payable under the Plans consist of the Company's unsecured promise to pay such amounts and, with respect to such amounts, the participants have the status of unsecured creditors."). And, in the event of Bowater's bankruptcy or insolvency, all Trust Assets are subject to the claims of Bowater's general creditors. *Trust Agreement* at § 3.3.

### B. The Trust Assets

15. The Trust contains cash and cash equivalents and executive life insurance policies, as set forth in more detail on Exhibit F (the "Trust Assets"). The Trust is the owner and beneficiary of the life insurance policies. The Trust Assets have a value of approximately $17.6 million, if the life insurance policies are valued on a cash surrender basis (as of June 30, 2009), and approximately $41.8 million, if the life insurance policies are valued on a death benefit payout basis (in each case, with cash investment assets valued as of March 31, 2010). Bowater's remaining grantor trusts contain no assets.

### BASIS FOR RELIEF

16. By this Motion, the Debtors seek this Court's authority to direct the Trustee to release the Trust Assets to the Debtors. Section 105(a) of the Bankruptcy Code provides in relevant part, "The court may issue any order, process or judgment that is necessary or

appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363 of the Bankruptcy Code authorizes a debtor, after notice and a hearing, to use property of the estate other than in the ordinary course of business. 11 U.S.C. § 363(b)(1).

17. Courts may approve a debtor's use of property of the estate under section 363(b)(1) of the Bankruptcy Code if it is based upon the exercise of the debtor's sound business judgment and proposed in good faith and for fair value. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986). The debtor must establish a valid purpose for the use of property of the estate outside of the ordinary course of business. *Lionel*, 772 F.2d 1070-71. If a sound business rationale exists, then a presumption attaches that the decision was informed, in good faith and in the honest belief that the action was in the best interests of the estate. *Integrated Resources*, 147 B.R. at 656.

18. Courts have applied four factors in determining whether a sound business justification exists: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration has been provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice has been provided. *In re Lionel Corp.*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *In re Abbotts Dairies*, 788 F.2d at 145-47 (implicitly adopting the articulated business justification test of *Lionel* and adding the "good faith" requirement); *In re Delaware & Hudson Ry. Co.*, 124 B.R. at 176 (adopting *Lionel* in this district).

19. Here, the Trust Assets are property of the Debtors' estates that, by the terms of the Trust Agreement, revert to Bowater upon Bowater's chapter 11 filing. Because the Debtors' request to direct the Trustee to release the Trust Assets to Bowater may arguably constitute use of the Debtors' property outside the ordinary course of business, the Debtors seek this Court's authorization, out of an abundance of caution, to implement the Debtors' contractual rights under section 363 of the Bankruptcy Code. The Debtors respectfully submit that complying with the terms of the Trust Agreement to release the Trust Assets for the benefit of general creditors upon insolvency constitutes a sound exercise of their business judgment.

20. Specifically, because the Trust is a "rabbi trust," its assets remain subject to the claims of Bowater's creditors. *See New Century Holdings,* 387 B.R. at 111. Like any other similar grantor trust structure, the Plans and the Trust Agreement render the Trust Assets subject to the claims of Bowater's general creditors upon its insolvency. The Trust Assets accordingly were property of Bowater's bankruptcy estate on the Petition Date. Moreover, the Participants do not have any beneficial ownership interest in the Trust Assets, because the Trust Assets at all times remained Bowater's property.

21. Finally, this Court has jurisdiction to determine whether the Trust assets are property of the Debtors' bankruptcy estates. *See New Century Holdings,* 387 B.R. at 111 (holding that the Court had core jurisdiction to determine whether assets held in a rabbi trust were property of the debtor's estate and proceedings "arising under" title 11). Accordingly, this Court constitutes one of "competent jurisdiction" within the meaning of the Trust Agreement, and can provide appropriate direction to the Trustee. The Debtors therefore respectfully request that this Court enter an order directing the Trustee to revert the Assets back to the Debtors' estates.

## NOTICE

22. Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the agents for the Debtors' prepetition secured bank facilities; (iv) counsel to the agent for the Debtors' postpetition lenders; (v) counsel to the agent for the Debtors' securitization facility; (vi) the Monitor; (vii) the Trustee; (viii) known Participants; and (ix) those parties entitled to notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

23. No previous motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

24. WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached as Exhibit A, granting this Motion and such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
July 14, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Sean T. Greecher*

Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Kelley A. Cornish
Claudia R. Tobler
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel for the Debtors and Debtors-in-Possession*