# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ABITIBIBOWATER INC., *et al.*,[1] | ) | Case No. 09-11296 (KJC) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) | **Ref. Docket No. 2460** |

## ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) APPROVING THE FORM AND CONTENTS OF THE SOLICITATION PACKAGE; (III) APPROVING THE FORM AND MANNER OF THE NOTICE OF THE CONFIRMATION HEARING; (IV) APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION PACKAGES; (V) APPROVING PROCEDURES FOR VOTE TABULATIONS; (VI) APPROVING THE CROSS-BORDER VOTING PROTOCOL; (VII) APPROVING THE FORM AND CONTENTS OF THE SUBSCRIPTION PACKAGES FOR A RIGHTS OFFERING; (VIII) APPROVING PROCEDURES FOR PARTICIPATING IN RIGHTS OFFERING; (IX) ESTABLISHING A RECORD DATE, A VOTING DEADLINE FOR RECEIPT OF BALLOTS AND AN EXPIRATION DATE FOR THE RIGHTS OFFERING; (X) ESTABLISHING THE DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN AND ASSERTED CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AS PART OF THE PLAN; AND (XI) GRANTING RELATED RELIEF

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AbitibiBowater Inc. (6415), AbitibiBowater US Holding 1 Corp. (N/A), AbitibiBowater US Holding LLC (N/A), AbitibiBowater Canada Inc. (N/A), Abitibi-Consolidated Alabama Corporation (4396), Abitibi-Consolidated Corporation (9050), Abitibi-Consolidated Finance LP (4528), Abitibi Consolidated Sales Corporation (7144), Alabama River Newsprint Company (7247), Augusta Woodlands, LLC (9050), Bowater Alabama LLC (7106), Bowater America Inc. (8645), Bowater Canada Finance Corporation (N/A), Bowater Canadian Forest Products Inc. (N/A), Bowater Canadian Holdings Incorporated (N/A), Bowater Canadian Limited (N/A), Bowater Finance Company Inc. (1715), Bowater Finance II LLC (7886), Bowater Incorporated (1803), Bowater LaHave Corporation (N/A), Bowater Maritimes Inc. (N/A), Bowater Newsprint South LLC (1947), Bowater Newsprint South Operations LLC (0168), Bowater Nuway Inc. (8073), Bowater Nuway Mid-States Inc. (8290), Bowater South American Holdings Incorporated (N/A), Bowater Ventures Inc. (8343), Catawba Property Holdings, LLC (N/A), Coosa Pines Golf Club Holdings LLC (8702), Donohue Corp. (9051), Lake Superior Forest Products Inc. (9305) and Tenex Data Inc. (5913). On December 21, 2009, ABH LLC 1 (2280) and ABH Holding Company LLC (2398) (the "SPV Debtors") commenced chapter 11 cases, which cases are jointly administered with the above-captioned Debtors. The Debtors' and SPV Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1155 Metcalfe Street, Suite 800, Montreal, Quebec H3B 5H2, Canada.

This matter having come before the Court on the motion (the "Motion") of AbitibiBowater Inc. ("AbitibiBowater"), and its affiliated debtors and debtors-in-possession in the above-captioned cases (each a "Debtor, " and collectively, the "Debtors"), seeking entry of an order (the "Order") (i) approving the Debtors' Disclosure Statement;[2] (ii) approving the form and contents of the Solicitation Package relating to the Plan and the accompanying Disclosure Statement; (iii) approving the form and manner of the notice of the Confirmation Hearing; (iv) approving procedures for distribution of Solicitation Packages; (v) approving procedures for vote tabulations; (vi) approving the Cross-Border Voting Protocol; (vii) approving the form and contents of the subscription packages for a Rights Offering; (viii) approving procedures for participating in a Rights Offering; (ix) establishing a Record Date, a Voting Deadline for receipt of ballots and an expiration date for the Rights Offering; (x) establishing the deadline and procedures for filing objections to confirmation of the Plan and to the Debtors' asserted cure amounts for executory contracts and unexpired leases that may be assumed by the Debtors as part of the Plan; and (xi) granting related relief; and objections having been filed by (A) the ACCC Term Loan Agent; (B) the ACE Group of Companies; (C) Riverside Claims, LLC ("Riverside"); (D) Chemco Inc.; (E) Wilmington Trust Company ("Wilmington Trust"), as successor indenture trustee for the 7.95% Notes issued by BCFC; (F) Wilmington Trust, as successor indenture trustee for the 15.50% Notes issued by ACCC; (G) Aurelius Capital Management, LP and Contrarian Capital Management, LLC; and (H) J&L Fiber Services; and this Court having heard statements of counsel at a hearing on July 30, 2010; and the Court having reviewed the Motion, this Order and the Exhibits attached hereto; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this

---

[2]    Unless otherwise indicated, capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (c) notice of the Motion was sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefore;

THE COURT FURTHER FINDS THAT:

A.     The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

B.     The forms of the ballots substantially in the forms attached to this Order as Exhibits B-1 through B-4 (each a "Ballot," and collectively, the "Ballots") are sufficiently consistent with Official Form No. 14 and adequately address the particular needs of these chapter 11 cases and are appropriate for each class of Claims entitled under the Plan to vote to accept or reject the Plan.

C.     Ballots need not be provided to the holders of impaired Claims and Interests in Class 9 because the Plan provides that holders in such classes are Impaired Non-Voting Parties under the Plan and shall neither receive nor retain any property under the Plan on account of such Claims and Interests, and thus are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

D.     Ballots need not be provided to the holders of unimpaired Claims and Interests in Classes 1 through 5 because the Plan provides that holders in such classes are unimpaired and deemed to have accepted the Plan and are therefore not entitled to vote to accept or reject the Plan.

E.     Ballots need not be provided to holders of Intercompany Claims in Class 8 because the Debtors, in their capacity as holders and plan proponents, are deemed to have accepted the Plan.

F.     The time period set forth below during which the Debtors may solicit acceptances to the Plan is a reasonable period of time for creditors to make an informed decision to accept or reject the Plan.

G.     The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully set forth in the Motion and approved hereby) provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

H.     The procedures for the solicitation and tabulation of votes against Cross-Border Debtors as provided in the Cross-Border Voting Protocol to accept or reject the Plan are efficient, fair and appropriate to satisfy the voting requirements for the Chapter 11 Cases. The form of Proxy/Ballot is sufficiently consistent with Official Form No. 14, adequately addresses the particular needs of these Chapter 11 Cases, and is appropriate under the facts of this case for each class of Claims against the Cross-Border Debtors entitled under the Plan to vote to accept or reject the Plan. The treatment of Convenience Class Claims with respect to the Cross-Border Debtors, as provided in the Cross-Border Voting Protocol, is fair and appropriate under the circumstances.

I.     The procedures set forth below regarding notice of the Confirmation Hearing and the contents of the Solicitation Package comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties.

J.     The subscription procedures with respect to the Rights Offering set forth in this Order and the Motion, as supplemented by the Backstop Commitment Agreement, dated

as of May 24, 2010 and amended and restated as of July 20, 2010 (as amended, supplemented or otherwise modified from to time to time the "Backstop Commitment Agreement"), among AbitibiBowater and the investors party thereto (the "Investors"), are fair and equitable, appropriate under the circumstances, and consistent with the Bankruptcy Code, the Bankruptcy Rules and principles of due process.

K.     The Subscription Forms (as defined below), the Notice of Rights Offering (as defined below) and the related instructions and other materials attached to this Order (as such materials may be modified by the Debtors in accordance with this Order), together with the Disclosure Statement, adequately describe the Rights Offering to enable a hypothetical reasonable investor typical of holders of Claims in Class 6 to make an informed judgment about the Rights Offering and the requirements and methods for participating in the Rights Offering.

L.     Solely for the purpose of determining the maximum number of Subscription Rights and any Oversubscription Amounts to be allocated to each Eligible Holder in the Rights Offering, the procedure for determining such allocation is fair and equitable, appropriate under the circumstances, and is consistent with the Bankruptcy Code, the Bankruptcy Rules and principles of due process.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED.  Any objections to the Motion or to the adequacy of the Disclosure Statement not previously withdrawn are hereby overruled.

2.     The Disclosure Statement is APPROVED.

### Solicitation Procedures

3.     Except as otherwise provided below, the Debtors are directed to mail or to cause to be mailed to creditors or equity security holders entitled to vote on the Plan on August

9, 2010, or as soon thereafter as reasonably practicable, Solicitation Packages containing: (a) written notice (the "Solicitation Package Notice"), substantially in the form annexed to this Order as Exhibit A, of (i) the Court's approval of the Disclosure Statement, (ii) the deadline for voting on the Plan, (iii) the date of the Confirmation Hearing, and (iv) the deadline and procedures for filing objections to confirmation of the Plan; (b) the Plan; (c) the Disclosure Statement; (d) a Ballot and a pre-addressed, postage paid, return envelope to be used to return a completed Ballot; (e) this Order; (f) with respect to Eligible Holders of Claims in Classes 6A through 6HH, Subscription Forms and other materials for participation in the Rights Offering (such materials will be sent contemporaneously with the Solicitation Package if not otherwise included with the Solicitation Package); and (g) such other information as the Court may direct or approve (items (a) through (g) being referred to herein collectively as the "Solicitation Package"). Creditors or equity security holders that have filed duplicate or multiple Claims in any given class will receive only one (1) Solicitation Package and one (1) Ballot for voting their Claims with respect to that class. Creditors or equity security holders holding Claims in more than one class, however, will receive separate Ballots that must be used for each separate class. The materials contained in the Solicitation Package (other than the Plan and the Disclosure Statement) shall be made available in French where appropriate. Such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

4.     The letter from the Creditors Committee in support of the Plan, substantially in form and substance as attached hereto, is approved and shall be included in the Solicitation Package.

5.     The Debtors are authorized to transmit some or all of the Solicitation Package in a CD-ROM format, including the Plan, the Disclosure Statement and this Order.

6. Prior to transmission of Solicitation Packages, the Debtors may fill in any missing dates and other information, clarify instructions for creditors or equity security holders, and make such other non-material, non-substantive changes to the Disclosure Statement and the Plan, including making conforming changes to the CCAA Information Circular as necessary, and make necessary changes and modifications to any other materials in the Solicitation Package as they deem appropriate, which may include, but will not be limited to modifications to the Ballots, Master Ballots, the Notice of Rights Offering and the Subscription Forms, in each case as the Debtors deem necessary to conform with this Order, the Plan and Disclosure Statement and to otherwise facilitate solicitation, voting, voting tabulation and participation in the Rights Offering, including, but not limited to, creating and distributing relevant and necessary forms of notice.

7. According to the Plan, holders of Claims in (a) Classes 1A through 1HH; (b) Classes 2A through 2G; (c) Classes 3A through 3G; (d) Classes 4A through 4G; (e) Classes 5A through 5HH; and (f) Classes 9A through 9HH are not entitled to vote to accept or reject the Plan. Accordingly, the Debtors are directed, pursuant to Bankruptcy Rule 3017(d), to mail or cause to be mailed to such Claim holders at the respective addresses to which notices are required to be sent, pursuant to Bankruptcy Rule 2002(g), a notice (the "Unimpaired Party Notice" or the "Impaired Non-Voting Notice" as appropriate), substantially in the forms attached to this Order as Exhibit C and D, which, among other things, contains a brief summary of the Plan and sets forth: (i) the Court's approval of the Disclosure Statement; (ii) the date of the Confirmation Hearing; and (iii) the deadline and procedures for filing objections to confirmation of the Plan. The Unimpaired Party Notice and the Impaired Non-Voting Notice will further provide that parties are entitled to receive a copy of the Plan and Disclosure Statement at the

Debtors' expense upon written request to Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, 3rd Floor, New York, New York 10017, <u>Attention</u>: AbitibiBowater Ballot Processing Center, or may obtain a copy from Epiq's website at http://dm.epiq11.com/abitibi.

8.    The Debtors shall not mail or cause to be mailed a Ballot or notice of the Confirmation Hearing to holders of Intercompany Claims in Classes 8A through 8HH because such holders are Plan proponents and shall not be entitled to vote to accept or reject the Plan.

9.    Each of the (i) Solicitation Package Notice, (ii) Unimpaired Party Notice and (iii) Impaired Non-Voting Notice, provide adequate notice to all creditors and equity security holders of the time set for filing objections to confirmation of the Plan and the Confirmation Hearing in accordance with Bankruptcy Rules 2002(b) and 2002(d).

10.    **June 30, 2010** shall be the Record Date for purposes of determining which creditors are entitled to receive a Solicitation Package and to vote on the Plan (subject to the disallowance of such creditors' claims for voting purposes as set forth herein), and for purposes of determining which creditors and equity security holders are entitled to receive the Unimpaired Party Notice and the Impaired Non-Voting Notice.

11.    The transferee of a transferred Claim is entitled to receive a Solicitation Package and vote to accept or reject the Plan on account of the transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Record Date, or (b) the transferee filed, no later than the Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the transferor has completed a Ballot, the transferee of such Claim shall also be

bound by any vote (and the consequences thereof) made on the Ballot by the holder as of the Record Date of such transferred Claim.

12. Except in the case of the Cross-Border Debtors, Epiq Bankruptcy Solutions, LLC, the Debtors' court-appointed notice, balloting and claims agent in these cases, shall be permitted to inspect, monitor and supervise the solicitation process, to serve as the tabulator of the Ballots and to certify to the Court the results of the balloting. Epiq Bankruptcy Solutions, LLC also shall serve as the subscription agent for the Rights Offering described below.

13. The Debtors shall, except as otherwise provided herein, mail by first class mail a Solicitation Package to each entity that (i) is entitled to vote and (ii) is listed on the Debtors' schedules of assets and liabilities, as amended, as of the Record Date, or has filed a Proof of Claim as of the Record Date.

14. With respect to addresses from which notices of the Disclosure Statement Hearing were returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages, Unimpaired Party Notices and Impaired Non-Voting Notices to those entities listed at such addresses unless the Debtors are provided with accurate addresses for such entities before the Disclosure Statement Hearing. Failure to mail Solicitation Packages to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline or violation of Bankruptcy Rule 3017(d). The Debtors may, but shall not be required to, attempt to locate the correct address, and prior to the Voting Deadline resend Solicitation Packages, Unimpaired Party Notices or Impaired Non-Voting Notices that are returned as undeliverable; provided, however, that in no event, unless expressly agreed to in writing by the Debtors, will such parties be afforded any additional time to vote.

15.     With respect to the Solicitation Packages that will be sent to certain holders of debt securities entitled to vote on the Plan, the Debtors shall deliver Solicitation Packages to the Voting Nominees.[3] Each Voting Nominee will receive reasonably sufficient numbers of Solicitation Packages, including sufficient Beneficial Ballots, to distribute to the beneficial holders of the Claims for whom such Voting Nominee acts (collectively, the "Beneficial Holders"). In addition, upon written request on or prior to the bar date for certain Administrative Claims set forth in Article 4.1 of the Plan with supporting back-up documentation, the Debtors shall reimburse each Voting Nominee's reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages to the Beneficial Holders of such Claims, the tabulation of the Ballots, and the completion of Master Ballots.

16.     The Debtors are authorized to distribute or cause to be distributed Master Ballots to the Voting Nominees after the initial distribution of Solicitation Packages, in accordance with customary procedures.

17.     The Voting Nominees are directed to distribute Solicitation Packages to the Beneficial Holders within five business days of receipt thereof, or such other date as determined by the Debtors and the Creditors Committee.

---

[3]     Unless pre-validated, Beneficial Holders should return their executed Beneficial Ballots to the Voting Nominee in either the pre-addressed envelope provided by the Voting Nominee and/or by any other means proscribed by the Voting Nominee and should not mail their Beneficial Ballots to the Debtors, the Claims and Noticing Agent, or the indenture trustee for their series of notes. Any Beneficial Ballot not timely received by the Voting Nominee shall not be counted for voting purposes.

To pre-validate a Ballot, the Voting Nominee shall complete Items 1 and 5 of the Beneficial Ballot and indicate on the Beneficial Ballot: (i) the name of the Voting Nominee, (ii) the amount of securites held by the Voting Nominee for the Beneficial Holder, and (iii) the account number(s) in which such securities are held. The Beneficial Holder shall then complete Items 2, 3, and 4 of the Beneficial Ballot and return the pre-validated Ballot to the Claims and Noticing Agent by the Voting Deadline.

18.     Each Voting Nominee is required to forward the Solicitation Packages to Beneficial Holders, receive returned Ballots from the Beneficial Holders, tabulate the results according to the instructions set forth in the Master Ballots, and (i) return such results in a Master Ballot to the Claims and Noticing Agent so that it is <u>actually received</u> prior to the Voting Deadline, and (ii) retain the underlying Ballots received from the Beneficial Holders for inspection for a period of one (1) year following the Voting Deadline.  The form of the Master Ballot attached to this Order as Exhibit <u>E</u> is hereby approved.

19.     In order to cast its vote, the Beneficial Holder should return its Beneficial Ballot to the Voting Nominee so that it is <u>actually received</u> by the date set by the Voting Nominee, so that the Voting Nominee has enough time to process the Ballots and summarize the results on the Master Ballot and submit the Master Ballot to the Claims and Noticing Agent so that it is <u>actually received</u> by the Claims and Noticing Agent on or before the Voting Deadline. The solicitation procedures with respect to Beneficial Holders as set forth herein are adequate and appropriate under the circumstances.

20.     To aid this process, the Industrial Revenue Bond Indenture Trustees are required to request on behalf of the Debtors the security position listing for Industrial Revenue Bonds as of the Record Date from The Depository Trust Company ("<u>DTC</u>") and/or CDS Clearing and Depository Services Inc. ("<u>CDS</u>"), as applicable.  The Debtors shall provide a draft letter, and the Industrial Revenue Bond Indenture Trustees shall furnish the completed letter to DTC and/or CDS, as applicable, within two (2) business days of receipt of such request, with a copy to the Debtors, as directed in the request.  The Debtors shall retain responsibility for making any payments to DTC and/or CDS, as applicable, that may be required in connection with the request.

21.     The Solicitation Package and the manner of service of the Solicitation Packages satisfy the requirements of Bankruptcy Rule 3017(d).  The manner of notification with respect to the Confirmation Hearing described in this Order provide adequate notice to parties in interest.

22.     **Noon prevailing Eastern Time on September 13, 2010** (the "Voting Deadline") is established as the deadline by which all Ballots and Master Ballots must be properly executed, completed, delivered to and <u>actually</u> <u>received</u> by the Claims and Noticing Agent.

23.     Except as otherwise provided herein, the Ballots and Master Ballots must be properly executed, completed and the original thereof shall be delivered to the Claims and Noticing Agent so as to be <u>actually</u> <u>received</u> on or before the Voting Deadline by first class mail, personal delivery, or overnight courier, at AbitibiBowater Ballot Processing Center, c/o Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, 3rd Floor, New York, NY 10017.  The time period established herein provides sufficient time for holders of claims and equity interests to make an informed decision with respect to the Plan.

24.     Creditors with multiple Claims within a particular class under the Plan, must vote all of their Claims within each particular class to either accept or reject the Plan and may not split their votes.

25.     A holder of Claims in more than one class under the Plan must execute a separate Ballot for each class of Claims in which the claimant holds a Claim.  In the case of debt securities, each Beneficial Holder must execute a separate Beneficial Ballot for each block of debt securities that it holds through any Voting Nominee and must return each such Beneficial Ballot to the appropriate Voting Nominee.

26.     The following types of Ballots **will not be counted** in determining

whether the Plan has been accepted or rejected:

    a.  Any Ballot or Master Ballot received after the Voting Deadline, except if otherwise determined in the Debtors' sole discretion but after consultation with the Creditors Committee;

    b.  Any Ballot or Master Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

    c.  Any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

    d.  Any Ballot that partially accepts and partially rejects the Plan, (except in the case of a Master Ballot);

    e.  Any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

    f.  Any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed or in an amount equal to zero dollars for which no Proof of Claim was timely filed and is not otherwise subject to a motion filed pursuant to Bankruptcy Rule 3018;

    g.  Any unsigned Ballot or a Ballot without an original signature, except in the Debtors' sole discretion; and

    h.  Any Ballot transmitted to the Claims and Noticing Agent by facsimile or other electronic means, except in the Debtors' sole discretion.

27.     In addition, the following voting procedures and standard assumptions will

be used in tabulating the Ballots:

    a.  Any executed Ballot that does not indicate either an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan shall not be counted.

    b.  The method of delivery of Ballots to the Claims and Noticing Agent is at the election and risk of each voting holder, but such delivery will be deemed made only when the original, executed Ballot is actually received by the Claims and Noticing Agent.

    c.  If multiple Ballots are received from an individual holder with respect to the same Claim prior to the Voting Deadline, the last dated valid Ballot timely received will be deemed to reflect such holder's intent and shall supersede and revoke any prior dated Ballot with respect to such Claim.

d. If a holder of Claim(s) casts multiple Ballots on account of the same Claim or Class of Claims, which are dated on the same day, but which are voted inconsistently, such Ballots shall not be counted (except in the case of a supplemental Master Ballot).

e. The Debtors, in their sole discretion but after consultation with the Creditors Committee, subject to contrary order of the Court, may waive any defect in any Ballot or Master Ballot at any time, including failure to timely file such Ballot, either before or after the close of voting, and without notice.

f. After the Voting Deadline, no vote may be withdrawn without the prior consent of the Debtors.

g. Subject to any contrary order of the Court, the Debtors reserve the right to reject any and all Ballots or Master Ballots not proper in form.

h. Subject to any contrary order of the Court, the Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot.

i. Unless otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots or Master Ballots must be cured within such time as the Debtors (or the Court) determine, and delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

j. Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots or Master Ballots, nor will any such party incur any liability for failure to provide such notification. Ballots or Master Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted.

k. Any holder of a Claim that opts for the Convenience Claim Election on account of such Claim shall make such election on its Ballot. If such a holder fails to make such an election on its Ballot or otherwise does not comply with the applicable instructions on the Ballot with respect to such election and the Claim is ultimately Allowed, the holder's Allowed Claim will be treated as a Class 6 Claim and receive a Pro Rata Share of New ABH Common Stock and of the Rights in accordance with Article 2.13 of the Plan.

28. Each Claim within the class of Claims entitled to vote to accept or reject the Plan will be temporarily allowed for purposes of voting on the Plan in accordance with the following:

a. Claims scheduled as contingent, unliquidated, disputed, undetermined in amount, or in an amount of $0.00, for which no Proof of Claim has been filed, are disallowed for voting;

b.  Proofs of Claim filed for $0.00 are disallowed for voting;

c.  If a Claim is partially liquidated and partially unliquidated, such Claim shall be temporarily allowed for voting purposes only in the liquidated amount;

d.  If the Debtors have requested that a Claim be reclassified and/or allowed in a fixed, reduced amount pursuant to an objection to such Claim, by motion or objection prior to August 9, 2010, such holder's Claim shall be temporarily allowed for voting purposes in the reduced amount requested by the Debtors and/or in the requested category unless otherwise estimated or Allowed by the Court;

e.  If the Debtors have requested that a Claim be expunged, by motion or objection prior to August 9, 2010, such holder's Claim shall not be allowed for voting purposes;

f.  If a creditor has requested that a Claim be reclassified and/or allowed in an estimated amount pursuant to a Rule 3018 Motion, then such Claim shall be temporarily allowed for voting purposes in the amount estimated or allowed by the Court, or in such other amount to which the Debtors and the moving party may agree;

g.  Filed Proofs of Claim that are filed in their entirety as contingent, unliquidated and/or disputed, or are filed for unknown or undetermined amounts, shall be temporarily allowed for voting purposes in the amount of $1.00;

h.  If a Claim is deemed allowed in accordance with the Plan, such Claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Plan;

i.  If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court;

j.  Any creditor who has filed or purchased duplicative Claims within the same Voting Class shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such class, regardless of whether the Debtors have objected to such duplicative Claims;

k.  For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, and the Convenience Claim Election, separate Claims held by a single creditor in a particular Class will be aggregated as if such creditor held one Claim against the Debtors in such Class, and the votes related to such Claims will be treated as a single vote to accept or reject the Plan; and

l.  Votes against the Cross-Border Debtors shall be temporarily allowed for voting purposes as provided in the Cross-Border Voting Protocol.

29.     With respect to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Holders, the amount that will be used to tabulate acceptance or rejection of the Plan will be the principal amount held by such Voting Nominees and Beneficial Holders as of the Record Date; provided, however, that any principal amounts may be adjusted by the Claims and Noticing Agent to reflect the amount of the Claim actually voted, including any prepetition interest.

30.     The following additional rules apply to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Holders:

a.  Votes cast by Beneficial Holders through a Voting Nominee will be applied against the positions held by such entities in the applicable debt security of the Debtors as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Voting Nominee pursuant to a Master Ballot will not be counted in excess of the Record Amount of the applicable securities held by such Voting Nominee on the Record Date.

b.  To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, the Claims and Noticing Agent, in good faith, will attempt to reconcile discrepancies with the applicable Voting Nominees.

c.  To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Claims and Noticing Agent will apply the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable security.

d.  Where a Beneficial Holder holds securities through more than one Voting Nominee, it must execute a separate Ballot for each block of debt securities it owns. However, such holder must vote all of its Claims in each Class in the same manner, to either accept or reject the Plan. Accordingly, if such holder returns more than one Ballot to more than one Voting Nominee voting different Claims within each Class under the Plan and the Ballots are not voted in the same manner, as reflected on such separate Master Ballots, such votes will not be counted.

e.  For the avoidance of doubt, the votes of Beneficial Holders shall be counted individually notwithstanding the submission of a Master Ballot by a Voting Nominee on account of such Beneficial Holders.

31.     The date that is four (4) business days (which is expected to be September 20, 2010) prior to the Confirmation Hearing is the deadline for the Claims and Noticing Agent to file its voting tabulations reflecting the votes cast to accept or reject the Plan. The tabulation report shall also detail any defective, irregular or otherwise invalid Ballots that were waived by the Debtors or were not waived and therefore not counted by the Debtors.

### Confirmation Hearing; Notice of Confirmation Hearing and Objections

32.     The Confirmation Hearing will be held at **10:00 a.m. prevailing Eastern Time on September 24, 2010**. The Confirmation Hearing may be continued from time to time by the Court without further notice except for adjournments announced in open court.

33.     The Debtors shall publish a notice, substantially in the form annexed to this Order as Exhibit I, of the time set for filing objections to confirmation of the Plan and the Confirmation Hearing in the national edition of either The Wall Street Journal, The New York Times or USA Today not less than twenty-eight (28) calendar days before the Confirmation Hearing. The Debtors also are directed to publish a French translation of the Publication Notice in an appropriate national edition of a French language publication in Canada. The Publication Notice shall provide sufficient notice of the Confirmation Hearing to persons who do not otherwise receive notice by mail.

34.     Any objections to confirmation of the Plan must be made in writing and must specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim(s) or Interest(s) held by the objector. The Court shall only consider timely filed written objections and all objections not timely filed and served in accordance with the provisions of the Motion shall be deemed waived. Any objections must be filed with the Court and served so that they are <u>actually received</u> by the Court, the following parties (the "Notice

<u>Parties</u>") and the other parties requesting notice in these cases on or before **Noon prevailing**

**Eastern Time on September 13, 2010.**

AbitibiBowater, Inc.
1155 Metcalfe Street, Suite 800
Montreal, Quebec H3B 5H2
Canada
Attn:   Stéphanie Leclaire

| | |
|---|---|
| Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>Co-Counsel to the Debtors and Debtors in<br>Possession<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>Attn:    Kelley A. Cornish, Esq.<br>           Alice Belisle Eaton, Esq. | Young Conaway Stargatt & Taylor, LLP<br>Co-Counsel to the Debtors and Debtors in<br>Possession<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19801<br>Attn:    Pauline K. Morgan, Esq.<br>           Sean T. Greecher, Esq. |
| Paul, Hastings, Janofsky & Walker LLP<br>Co-Counsel to the Official Creditors' Committee<br>75 East 55th Street<br>New York, NY 10022<br>Attn:    Luc Despins, Esq.<br>           Robert E. Winter, Esq. | Bayard, P.A.<br>Co-Counsel to the Official Creditors Committee<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE 19899<br>Attn:    Neil B. Glassman, Esq.<br>           Jamie L. Edmonson, Esq. |
| Office of the United States Trustee for<br>the District of Delaware<br>J. Caleb Boggs Federal Building<br>844 King Street, Lockbox 35<br>Wilmington, DE 19801<br>Attn:    David M. Klauder, Esq. | |
| Ernst & Young Inc.<br>Monitor<br>800 René-Lévesque Blvd. West<br>Suite 1900<br>Montréal, QC, H3B 1X0<br>Attn:    Alex F. Morrison | Allen & Overy LLP<br>Counsel to the Monitor<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Attn:    Rowena White |
| Morgan Lewis & Bockius LLP<br>Co-Counsel to Wells Fargo Bank, National<br>  Association (as successor to Wachovia Bank,<br>  N.A.),<br>  as the Bowater Secured Bank Agent<br>101 Park Avenue<br>New York, New York  10178-0600<br>Facsimile:  (212) 309-6001<br>Attn:    Richard S. Toder, Esq. | Connolly Bove Lodge & Hutz LLP<br>Co-Counsel to Wells Fargo Bank, National<br>  Association (as successor to Wachovia Bank, N.A.),<br>  as the Bowater Secured Bank Agent<br>1007 North Orange Street<br>8th Floor<br>Wilmington, DE 19899<br>Facsimile:  (302) 658-5614<br>Attn:    Jeffrey C. Wisler, Esq. |

35.     The Debtors, or any other party supporting the Plan, may file a reply to

any objection to confirmation of the Plan no later than three (3) business days (which is

expected to be September 21, 2010) prior to the Confirmation Hearing (including any adjournments thereof).

## 3018 Motions

36.  Except as otherwise provided by the express terms of this Order, each holder of a Claim within a class of Claims entitled to vote to accept or reject the Plan shall be entitled to vote the Face Amount of such Claim as of the Record Date. The Face Amount of a Claim means (a) the amount fixed or estimated in an order of the Bankruptcy Court, (b) for filed Claims, the liquidated amount set forth on the Debtors' claims register or maintained by Epiq, or (c) for scheduled Claims, the amount of the Claim listed in the Schedules as liquidated, undisputed and not contingent. Where possible, the Debtors are authorized, but not directed, to fill in the Face Amount of a Claim on the Ballot.

37.  If any party wishes to have its Claim allowed for purposes of voting on the Plan in a manner that is inconsistent with the Ballot it received or the rules as set forth herein, such party must serve on the Debtors and file with the Bankruptcy Court, on or before 4:00 p.m. prevailing Eastern Time on August 16, 2010, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes.[4] A Rule 3018 Motion must set forth with particularity the amount and classification in which such party believes its Claim should be temporarily allowed for voting purposes and the evidentiary support for temporarily allowing such Claim for purposes of voting on the Plan.

38.  In respect of any timely-filed Rule 3018 Motion, the Ballot in question shall be counted (a) in the amount established in an order entered by the Bankruptcy Court, (b) in the amount agreed to be the Debtors and the moving party or (c) if such an order has not been

---

[4]  See paragraph 60 of this Order regarding treatment of 3018 Motions in the context of claims allowance for purposes of participating in the Rights Offering.

entered by the Bankruptcy Court and the Debtors and the moving party have not come to an agreement as to the relief requested in the Rule 3018 Motion, in an amount equal to the preprinted amount on the Ballot, or in the event the moving party did not receive a Ballot, $0.00. Rule 3018 Motions with respect to Claim allowance for voting purposes will be heard no later than the Confirmation Hearing.

## Cross-Border Voting Protocol

39.     The Cross-Border Voting Protocol, substantially in the form attached to this Order as Exhibit F, is hereby approved.

40.     As set forth in the Cross-Border Voting Protocol, and subject to approval by the Canadian Court, the Debtors are authorized to combine solicitation of votes for the Plan with solicitation for votes under the CCAA Plan. The Debtors are authorized to count a vote to accept the CCAA Plan by a Cross-Border Voting Creditor as a vote to accept the Plan, and a vote to reject the CCAA Plan by a Cross-Border Voting Creditor as a vote to reject the Plan. A Cross-Border Voting Creditor that submits a Proxy/Ballot for voting at the Creditors' Meeting will be deemed to submit such Proxy/Ballot as a vote to accept or reject both the Plan and the CCAA Plan and shall be bound by the results of such Proxy/Ballot for purposes of both plans.

41.     If the amount of a Cross-Border Voting Creditor's Claim has not been resolved and remains disputed by the Voting Record Date (a "Cross-Border Disputed Claim"), it shall be temporarily allowed solely for the purposes of voting in accordance with the following:

a.      If the Cross-Border Disputed Claim has been valued in the notice of disallowance sent by the Monitor at $0, then the Disputed Claim shall be allowed to vote to accept or reject the CCAA Plan or the U.S. Plan in the amount of $1.00.

b.      If the Cross-Border Disputed Claim has been valued in the notice of disallowance sent by the Monitor in any amount other than $0 (the "Cross-Border Valued Amount"), then the Disputed Claim shall be allowed to vote

to accept or reject the CCAA Plan or the U.S. Plan in the Cross-Border Valued Amount.

c.    The holder of a Cross-Border Disputed Claim may either (a) request that the Monitor refer, on an expedited basis, the Cross-Border Disputed Claim to a claims officer appointed under the Canadian bar date and claims orders to fix the amount of the Cross-Border Disputed Claim for voting purposes only, or (b) file a motion in the U.S. court under Rule 3018 of the U.S. Federal Rules of Bankruptcy Procedure seeking an estimation of the amount of the Cross-Border Disputed Claim for voting purposes only so as to be heard prior to the CCAA Creditors' Meetings. Any determination made by the Canadian claims officer or the U.S. Court pursuant to this paragraph shall be binding in both the CCAA Proceedings and the Chapter 11 Cases and shall be binding for voting purposes only.

42.    Subject to the Monitor's review, Claims scheduled by the Cross-Border Debtors in a liquidated or partially liquidated amount, or Claims filed by Cross-Border Voting Creditors in a liquidated or partially liquidated amount, in both cases only if such claims are not Cross-Border Disputed Claims, shall be entitled to vote in such liquidated or partially liquidated amount (collectively, a "Partially Liquidated Claim").

43.    For the avoidance of doubt, any timely filed proof of claim against a Cross-Border Debtor or any claim scheduled by a Cross-Border Debtor to which the Canadian Debtors or the Monitor have not objected or filed a notice of disallowance, and which are not unliquidated and contingent by their nature, shall be allowed to vote in the liquidated face amount of such Claim.

44.    Subject to the Monitor's review, any Claims against the Cross-Border Debtors that are filed as contingent, unliquidated, or undetermined on the face of the Claim, or that by their nature are unliquidated or contingent claims, shall vote in the amount of $1.00 (such claims, "Unliquidated Claims") unless the Monitor and the Debtors determine, after reasonable review, that such Unliquidated Claim should be allowed for voting purposes in a different amount, in which case the Monitor shall notify the holder of such Unliquidated Claim as to such

different amount. The holder of an Unliquidated Claim may either (a) request that the Monitor refer, on an expedited basis, the Unliquidated Claim to a claims officer appointed under the Canadian Claims Orders to fix the amount of the Unliquidated Claim for voting purposes only, or (b) file a motion in this Court under Bankruptcy Rule 3018 seeking an estimation of the amount of the Unliquidated Claim for voting purposes only so as to be heard prior to the CCAA Meeting. Any determination made by the Canadian claims officer or the Court pursuant to this paragraph shall be binding in both the CCAA Proceedings and the Chapter 11 Cases and shall be binding for voting purposes only.

45. With respect to proceedings for the determination of the value of Cross-Border Disputed Claims and/or Unliquidated Claims for voting purposes, the Monitor has standing to participate in any U.S. proceeding and the Creditors Committee has standing to participate in any CCAA proceeding.

46. The convenience claim thresholds under the CCAA Plan (CDN$6,073) and the U.S. Plan (US$5,000) account for differences caused by the foreign exchange rate between the U.S. and Canadian dollar on April 17, 2009 using the Bank of Canada noon spot rate of exchange for exchanging currency to Canadian dollars (US$1=CDN$1.2146). Only with respect to Cross-Border Debtors, for purposes of determining whether a Claim is a Convenience Claim as defined in the Plan or a Cross-Border Convenience Claim as defined in the CCAA Plan, (a) all eligible Claims will be valued in Canadian dollars using the Petition Date conversion rate set forth in the Claims Orders (as defined in the Cross-Border Voting Protocol); (b) will be determined in reference to the dollar thresholds established for such treatment under the CCAA Plan (CDN$6,073); and (c) cash distributions on account of such Claims, once allowed, will be made in Canadian dollars. A classification or valid election to participate as (x) a Convenience

Claim as defined in the Plan or (y) a Cross-Border Convenience Claim as defined in the CCAA Plan will be binding for purposes of voting and distributions under both Plans.

47.     If a Cross-Border Voting Creditor submits a Proxy/Ballot to the Monitor in the CCAA Proceedings and to Epiq in these chapter 11 proceedings, the last timely filed vote will govern.  Epiq shall provide to the Monitor a copy of each Proxy/Ballot that it receives in respect of a Cross-Border Debtor at or prior to the commencement of the CCAA Creditors' Meetings.

48.     In the event that a Proxy/Ballot is incomplete, such Proxy/Ballot shall be excluded from the vote.  The results of the vote conducted at the CCAA Creditors' Meeting shall be binding on all Cross-Border Voting Creditors whether or not any particular Cross-Border Voting Creditor is present in person or by proxy while voting at the CCAA Creditors' Meeting. The Canadian Debtors and the Monitor shall have discretion to accept Proxy/Ballots that are not entirely consistent with the procedures set forth herein.  Following the vote, the Monitor shall tally the votes and determine whether the CCAA Plan has been accepted by the requisite majority of each Class of Affected Creditors (as defined in the CCAA Plan).

49.     On or before September 16, 2010 or on such other date as may be determined by the Debtors and the Monitor, the Monitor shall provide a certified report to Epiq with respect to the results of the vote with respect to the Cross-Border Debtors, including whether the CCAA Plan has been accepted by the requisite majorities in respect of claims against the Cross-Border Debtors.  Such tabulation report will also detail any defective, irregular or otherwise invalid Ballots that were counted or not counted by the Monitor.

50.     The Cross-Border Voting Protocol does not supersede, amend or modify the Court Cooperation Protocol or the Claims Reconciliation Protocol, both of which remain in

place in full and all parties' rights thereunder remain unaffected by the Cross-Border Voting Protocol.

## **Rights Offering Solicitation Procedures**

51.     The subscription procedures with respect to the Rights Offering described in the Motion, as modified by this Order and the Backstop Commitment Agreement, are approved. The Debtors are authorized and empowered to take any and all actions necessary and appropriate to implement such procedures and effectuate the Rights Offering.

52.     **June 30, 2010** shall be the Rights Offering Record Date for purposes of identifying Eligible Claims and for purposes of initially allocating Subscription Rights and any Oversubscription Amounts (as defined in the Backstop Commitment Agreement), to Eligible Holders.

53.     The Rights Offering subscription period shall commence on the Solicitation Date (the "Subscription Commencement Date") and shall conclude at **4:00 p.m. prevailing Eastern Time on September 10, 2010** (the "Rights Offering Expiration Time"). The Debtors are authorized to, and reserve the right to, in consultation with the Creditors Committee and the Monitor, extend the Rights Offering Expiration Time and notice of such extension will be made through a notice filed on the docket.

54.     Subject to approval by the Canadian Court, the Debtors are authorized to combine the solicitation process for votes for the Plan and the CCAA Plan with the subscription process for the Rights Offering.

55.     The Debtors, through Epiq, are authorized to distribute Subscription Forms and related materials directly to Eligible Holders of Claims in Classes 6A through 6HH. The Cross-Border Debtors, through the Monitor and subject to approval from the Canadian

Court, are authorized to distribute Subscription Forms and related materials to Eligible Holders holding claims against the Cross-Border Debtors in accordance with the terms of the Cross-Border Voting Protocol. The Debtors shall provide a subscription form in substantially the form set forth in Exhibit H-1, Exhibit H-2 or Exhibit H-3 to this Order (each a "Subscription Form"), whichever form is applicable to an Eligible Claim, to each Eligible Holder, together with appropriate instructions for the proper completion, due execution and timely delivery of the Subscription Form, as well as instructions for the payment of the applicable purchase price for that portion of the Subscription Rights and any Oversubscription Amount that such holder may elect to exercise, with each Eligible Holder's Solicitation Package. The Debtors are also authorized to send a notice of the commencement of the Rights Offering, substantially in the form as set forth in Exhibit G to this Order (the "Notice of Rights Offering"). The Subscription Forms and the Notice of Rights Offering are approved.

56. The Debtors are authorized to make modifications to the Subscription Forms and the Notice of Rights Offering as permitted by the terms of this Order. The Debtors are authorized to distribute the Subscription Forms, the instructions thereto and related notices in both French and English as may be appropriate and to undertake any actions necessary and appropriate to cause such translations to be available.

57. With regard to claims arising under the notes held through the DTC or CDS by a bank or brokerage firm on behalf of Beneficial Holders, the Debtors are authorized to distribute, through Epiq or the Monitor, as the case may be, Subscription Forms to the bank or brokerage firm holding such notes, or such firm's agent, and such bank, brokerage firm, or agent shall forward information with respect to the Rights Offering to Beneficial Holders of those securities and the bank or brokerage firm shall effect any exercise of Subscription Rights

and any Oversubscription Amount on their behalf through DTC's Automated Subscription Offer Program ("ASOP") or CDSX (the clearing and settlement system utilized by CDS and its participants). Such firms may use the Subscription Forms provided or such other form as they may customarily use for the purpose of obtaining instructions with respect to a subscription on account of the Beneficial Holder's claim. With regard to claims arising from securities held exclusively through CDS that are entitled to participate in the Rights Offering, the Debtors will distribute Subscription Forms and effect any exercise of Subscription Rights and any Oversubscription Amount, in accordance with the customary procedures of CDS, and their respective participants. In the event Subscription Rights and any Oversubscription Amount are exercised by a Beneficial Holder other than through the completion of the Subscription Form, the Beneficial Holders making such an exercise will be deemed to have made the certification regarding the transferability of the Subscription Rights and Oversubscription Amounts set forth in the Subscription Form and described in the Disclosure Statement.

58.     To exercise the Subscription Rights and any Oversubscription Amount each Eligible Holder must: (i) return a duly completed Subscription Form to Epiq and (ii) pay or arrange for payment to the Escrow Agent of such holder's purchase price (the "Total Subscription Purchase Price") so that the completed Subscription Form is actually received by Epiq and the Total Subscription Purchase Price is actually received by the Escrow Agent on or before the Rights Offering Expiration Time. The Total Subscription Purchase Price of Eligible Holders (other than those exercising their Subscription Rights and any Oversubscription Amounts through DTC or CDS) must be paid by wire transfer in U.S. dollars directly to the Escrow Agent.

59.     The wire transfer of the Total Subscription Purchase Price must include a reference to the identification number assigned to the Eligible Holders Claim or Claims set forth in the

corresponding Subscription Form. The Debtors may cancel the Subscription Rights or any Oversubscription Amount of an Eligible Holder if such holder submits Total Subscription Purchase Price funds without reference to the identification number assigned to the Eligible Holder's Claim or Claims such that the Debtors (a) are unable to reasonably reconcile the Subscription Form with the Total Subscription Purchase Price or (b) reasonably determine that reconciling such discrepancy or omission would result in an undue administrative burden. The Total Subscription Purchase Price of Eligible Holders who exercise their Subscription Rights or any Oversubscription Amount, through DTC or CDS will be automatically withdrawn upon submission of a Subscription Form and transferred through the internal systems of DTC or CDS. An Eligible Holder does not need to include its identification number if payment of the Total Subscription Purchase Price is being transferred by DTC or CDS.

60.     Both (i) a duly completed Subscription Form or equivalent instructions from DTC or CDS and (ii) immediately available funds in an amount equal to such holder's Total Subscription Purchase Price must be actually received by Epiq and the Escrow Agent, respectively, on or prior to the Rights Offering Expiration Time or payment. If an Eligible Holder fails to comply with these requirements and any requirements set forth in the Subscription Form, such Eligible Holder shall be deemed to have relinquished and waived its right to participate in the Rights Offering. Incomplete Subscription Forms and payment of less than the full amount of the Total Subscription Purchase Price each may result in cancellation of the corresponding Subscription Rights and any Oversubscription Amount.

61.     The formulas set forth in the Motion and the Backstop Commitment Agreement by which the Debtors will calculate the number of Subscription Rights and any

Oversubscription Amounts to which an Eligible Holder is entitled are fair and reasonable, appropriate under the circumstances, and hereby approved.

62.     In the event that the amount of an Eligible Holder's Claim, as determined for voting purposes, increases by order of the Court or the Canadian Court, or by the Monitor or a claims officer appointed in the CCAA Proceedings, on or before August 17, 2010 (or such later date as agreed among the Debtors, the Creditors Committee and the Monitor) as a result of either a successful 3018 Motion by such Eligible Holder for subscription purposes, the Debtors' claims reconciliation process, or otherwise, the Debtors are authorized to deliver to such Eligible Holder a supplemental Subscription Form permitting such Eligible Holder to exercise additional incremental Subscription Rights with regard to such increased amount. Eligible Holders who are provided the opportunity to exercise incremental Subscription Rights must do so by (i) completing and delivering the Supplemental Subscription Form to Epiq and (ii) submitting the additional Total Subscription Purchase Price by wire transfer to the Escrow Agent, in each case, by the Rights Offering Expiration Time. To the extent that an impacted Eligible Holder's Claim arises on account of securities held through DTC or CDS, such Eligible Holder may exercise its incremental Subscription Rights through the procedures set forth herein with respect to DTC and CDS, provided that such exercise must, in any event, be completed by the Rights Offering Expiration Time. The Debtors are authorized to modify the approved Subscription Forms as necessary to serve as the Supplemental Subscription Forms.

63.     Each Eligible Holder shall be bound by the amount of a Claim set forth in the Solicitation Materials, the Subscription Form or as otherwise determined by the Court solely for voting and subscription purposes. Neither the Debtors nor any Eligible Holder shall be

bound by or affected by such amounts for allowance, evidentiary or any other purposes other than with respect to voting on the Plan and participating in the Rights Offering.

64. Each provision of this paragraph 64 applies to the BCFC Contribution Claim, the 7.95% Notes Guaranty Claim and creditors of BCFC solely for the purposes of the Rights Offering and notwithstanding that both the BCFC Contribution Claim and the 7.95% Notes Guaranty Claim may be challenged. Capitalized terms used in this paragraph 64 shall have the meaning ascribed thereto in the Backstop Commitment Agreement or the Plan. Nothing in this Order shall be interpreted to prejudice the rights, if any, of any party in interest to seek to have Allowed the 7.95% Notes Guaranty Claim or the BCFC Contribution Claim or both, the rights of any party in interest to object to one or both of such Claims on any basis, or the rights of any party in interest with respect to such Claims under Bankruptcy Rule 3018.

(a) The BCFC Contribution Claim is deemed to be an Eligible Claim against Bowater Incorporated and will be allocated Subscription Rights and applicable Oversubscription Amounts for the benefit of, and to be exercised by, creditors of BCFC. For the purpose of exercising Subscription Rights and applicable Oversubscription Amounts allocated on account of the BCFC Contribution Claim, creditors of BCFC are deemed to be Eligible Holders permitted to participate in the Rights Offering.

(b) Each of the BCFC Contribution Claim and the 7.95% Notes Guaranty Claim will be temporarily allowed in the amount of $619,875,000 and the BCFC Contribution Claim shall be treated as an Unresolved Claim, subject to the escrow provisions of the Backstop Commitment Agreement, and the 7.95% Notes Guaranty Claim shall be treated as an Allowed Claim.

(c) Notwithstanding the definition of the BCFC Contribution Claim in the Plan, the BCFC Contribution Claim shall be temporarily allowed solely for the purpose of participation in the Rights Offering as provided in this paragraph and shall be Allowed for purposes of receiving Rights Offering Notes in the amount and at the time ordered by a Final Order. The BCFC Contribution Claim will not be treated as an Unresolved Claim if it is Allowed by a Final Order prior to the Determination Date.

(d) Notwithstanding anything to the contrary contained in paragraph 64 of this Order, the Debtors may only adjust the number of Subscription Rights and any Oversubscription Amounts allocable on account of the 7.95% Notes Guaranty Claim and the BCFC Contribution Claim as may be required under the Backstop Commitment Agreement and pursuant to the 1145 Cutback.

(e) Nothing set forth in this paragraph 64 with respect to the 7.95% Notes for purposes of the Rights Offering shall impact the ability of the holders of the 7.95% Notes to vote Class 6S Claims against Debtors Bowater Inc. in the aggregate amount of $619,875,000.

65. The Debtors are authorized to adjust the total amount of the Rights Offering and to adjust the number of Subscription Rights and Oversubscription Amounts allocated to Eligible Holders on account of an Eligible Claim, in each case consistent with the Backstop Commitment Agreement and as the Debtors determine to be reasonably necessary to effectuate the Rights Offering or to permit fair participation by Eligible Holders. The Debtors are authorized, but are not required, to make adjustments to participation in any Oversubscription Amount to address claims modifications that occur after June 30, 2010 but on or before August 17, 2010. The Debtors are authorized, but not directed, to refrain from modifying an Eligible

Holder's Subscription Rights and any Oversubscription Amount in the event that the increase or decrease represents a change of less than $10,000 in the amount of Rights Offering Notes such Eligible Holder would otherwise be able to subscribe for, or as otherwise determined by the Debtors. The Debtors are authorized, but not directed, to make adjustments to the number of Rights Offering Notes allocable to an Eligible Claim in accordance with the 1145 Cutback (as defined in the Backstop Commitment Agreement).

66.     As promptly as practicable following the Rights Offering Expiration Time, the Debtors will deliver to each Eligible Holder that has sought to exercise Subscription Rights and Oversubscription Amounts (or to DTC or CDS with respect to any subscription effected through DTC or CDS's systems) a written statement specifying the portion of the Subscription Rights and Oversubscription Amounts that was validly and effectively exercised by such holder. If the Debtors reduce the number of Rights Offering Notes as a result of their decision to reduce or cancel the Rights Offering, the Debtors also will file a notice with the Court, and deliver a notice to the Monitor and the Investors, detailing the amount of, and basis for, such reduction or cancellation.

67.     To the extent of any reduction in the number of Subscription Rights and Oversubscription Amounts that an Eligible Holder is entitled to exercise, as soon as reasonably practicable following the Rights Offering Expiration Time, the Escrow Agent is authorized to return to the Eligible Holder the portion of the funds received from the Eligible Holder as part of the Total Subscription Purchase Price representing such withdrawn Subscription Rights or Oversubscription Amounts. The return of funds to Unresolved Claimholders in accordance with the terms of the Backstop Commitment Agreement, as necessary, shall occur as soon as reasonably practicable following disallowance of all or a portion of an Unresolved Claim. The return of any Total Subscription Purchase Price, either on account of an adjustment of the total

amount of the Rights Offering, the reduction of the Subscription Rights or Oversubscription Amounts, upon maturity of the Rights Offering Notes or otherwise, will be effectuated in accordance with the terms of the Backstop Commitment Agreement.

68.     Subscription Rights will not be validly exercised if the relevant Subscription Form is:

a.     received after the Rights Offering Expiration Time, except if otherwise determined in the Debtors' sole discretion but after consultation with the Creditors Committee;

b.     illegible or contains insufficient information to permit the identification of the claimant;

c.     submitted by a person or entity that does not hold a Claim in Class 6 of the Plan or an Affected Unsecured Claim in the CCAA Plan;

d.     unsigned without an original signature, except in the Debtors' sole discretion; or

e.     transmitted to the Claims and Noticing Agent by facsimile or other electronic means, except in the Debtors' sole discretion.

69.     The following procedures and standard assumptions are to be used in tabulating the Subscription Forms:

a.     The method of delivery of the H-1 and H-3 Subscription Forms to the Claims and Noticing Agent is at the election and risk of each Eligible Holder, but such delivery will be deemed made only when the original, executed Subscription Forms is actually received by the Claims and Noticing Agent. Delivery of the H-2 Subscription Forms to the Eligible Holder's Voting Nominee is at the election and risk of each Eligible Holder and must be made in time to convey such election to DTC's Automated Subscription Offer Program, or, if applicable, CDSX (the clearing and settlement system utilized by CDS and its participants), but such delivery will be deemed made only when the election is effected by DTC or CDS, as applicable.

b.     The Debtors, in their sole discretion but after consultation with the Creditors Committee, subject to contrary order of the Court, may waive any defect in any Subscription Form at any time, either before or after the close of subscription, and without notice.

c. After the Rights Offering Expiration Time no Subscription Form may be withdrawn without the prior consent of the Debtors.

d. Subject to any contrary order of the Court, the Debtors reserve the right to reject any and all Subscription Forms not proper in form;

e. Subject to any contrary order of the Court, the Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Subscription Form.

f. Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Subscription Forms, nor will any such party incur any liability for failure to provide such notification.

g. The Debtors, in their sole discretion and without order of the Court, may immediately cancel the Subscription Rights and Oversubscription Amounts of any Eligible Holder that is determined by the Debtors to be in violation of any certification or representation made by such Eligible Holder as part of its Rights Offering subscription.

h. If Subscription Rights and Oversubscription Amounts are exercised other than pursuant to the Subscription Forms, the Eligible Holders will be deemed to have made the certification regarding the transferability of Subscription Rights and Oversubscription Amounts contained in the Subscription Forms.

i. The Debtors must be able to match each Eligible Holder's completed Subscription Forms with the corresponding Total Subscription Purchase Price paid by such Eligible Holder. As such, the Debtors reserve the right to cancel the Subscription Rights and Oversubscription Amounts of an Eligible Holder if such holder, among other things, submits Subscription Purchase Price funds without reference to the identification number assigned to the Eligible Holders Claim or Claims set forth in the corresponding Subscription Form such that the Debtors are unable to reasonably reconcile the Subscription Form with the Total Subscription Purchase Price or reasonably determine that reconciling such discrepancy or omission would result in an undue administrative burden.

70. Any Claim (or portion thereof) that is deemed withdrawn on or before the Effective Date (whether pursuant to the Plan or otherwise) shall not participate in the Rights Offering to the extent of the withdrawn Claim or portion thereof. Any Total Subscription

YCST01:9983093.2

068104.1001

Purchase Price received from an Eligible Holder on account of such withdrawn Claim shall be returned as soon as reasonably practicable after the Effective Date.

71.     Any Claim that is (a) Unimpaired under the Plan, unaffected under the CCAA Plan, or that is a Claim arising from a guaranty of an Unimpaired Claim under the Plan or an unaffected Claim under the CCAA Plan, or (b) paid in full in cash under the Plan or that is satisfied in cash under the CCAA Plan, shall not participate in the Rights Offering. Any Total Subscription Purchase Price received from an Eligible Holder on account of such Claims shall be returned as soon as reasonably practicable after the Effective Date.

72.     The Debtors are authorized, and the Debtors reserve the right to, amend the Backstop Commitment Agreement and Exhibit E to the Disclosure Statement (the Convertible Unsecured Subordinated Notes term sheet) in accordance with their respective terms, without the need to amend or supplement the Disclosure Statement. The Debtors may adopt, as necessary, any additional procedures to effectuate the Rights Offering, distribute the Rights Offering Notes to Eligible Holders, and comply with the terms and conditions of the Backstop Commitment Agreement. The Debtors may, in consultation with the Creditors Committee and the Monitor, execute and enter into agreements and take further action, and implement such procedures, as may be necessary or appropriate to effectuate and implement the Rights Offering and distribute the Rights Offering Notes to Eligible Holders without further order of this Court.

## Cure Notice; Cure Objections

73.     The Debtors will cause the *Notice of (I) Possible Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto* (the "Cure Notice"), in a form substantially similar to the form attached to this Order as Exhibit J, to be

served on the non-debtor parties to all executory contracts and unexpired leases (the "Subject Contracts") not less than ten (10) business days prior to the Voting Deadline. Among other things, the Cure Notice shall set forth the amount which the Debtors believe must be paid in order to cure all monetary defaults under each of the Subject Contracts.

74. The Cure Notice provides adequate notice to all non-debtor parties to all executory contracts and unexpired leases of (i) the possibility that such non-debtor parties' Subject Contracts may be assumed, (ii) the Debtors asserted Cure Amounts with respect to such Subject Contracts and (iii) the procedure for filing Cure Objections with respect to such Cure Amounts and/or the proposed assumption and/or assignment of such Subject Contracts under the Plan. Receipt of a Cure Notice shall not constitute a determination by the Debtors to assume any executory contract or unexpired lease; the Debtors may still decide not to assume any executory contract or unexpired lease through the Plan or otherwise.

75. The non-Debtor parties to the Subject Contracts shall have eighteen (18) calendar days after service of the Cure Notice (the "Cure Objection Deadline"), which deadline may be extended in the sole discretion of the Debtors, to object (a "Cure Objection") to the (a) cure amounts listed by the Debtors ("Cure Amounts") and to propose alternative cure amounts, and/or (b) proposed assumption and/or assignment of the Subject Contracts under the Plan; provided, however, that if the Debtors amend the Contract Notice or any related pleading that lists the Subject Contracts to add a contract or lease or to reduce the cure amount thereof, except where such reduction was upon mutual agreement of the parties, the non-debtor party thereto shall have an additional ten (10) calendar days after service of such amendment to object thereto or to propose an alternative cure amount(s).

76.     Any party objecting to the Cure Amount(s), whether or not such party previously has filed a Proof of Claim with respect to amounts due under the Subject Contract(s), or objecting to the potential assumption and/or assignment of such Subject Contract(s), shall be required to file and serve a Cure Objection, in writing, setting forth with specificity any and all obligations that the objecting party asserts must be cured or satisfied in respect of the Subject Contract(s) and/or any and all objections to the potential assumption and/or assignment of such Subject Contract(s), together with all documentation supporting such cure claim or objection, upon each of the Notice Parties so that the Cure Objection is actually received no later than 4:00 p.m. on the Cure Objection Deadline.  If a Cure Objection is timely filed and the parties are unable to settle such Cure Objection, the Bankruptcy Court shall determine the amount of any disputed Cure Amount(s) or objection to assumption at the Confirmation Hearing.

77.     The Debtors may, in their sole discretion, extend the Cure Objection Deadline without further notice, but are not obligated to do so.

78.     In the event that no Cure Objection is timely filed with respect to a Subject Contract, the counterparty to such Subject Contract shall be deemed to have consented to the assumption of the Subject Contract and the Cure Amount proposed by the Debtors and shall be forever enjoined and barred from seeking any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors.  In addition, if no timely Cure Objection is filed with respect to a Subject Contract, upon the Effective Date of the Plan, the Reorganized Debtors and the non-debtor party to the Subject Contract shall enjoy all of the rights and benefits under the Subject Contract without the necessity of obtaining any party's written consent to the Debtors' assumption of the Subject Contract, and such counterparty shall be deemed to have waived any

right to object, consent, condition or otherwise restrict the Debtors' assumption of the Subject Contract.

79.     The inclusion of a Subject Contract in the Cure Notice is without prejudice to the Debtors' right to modify their election to assume or to reject such Subject Contract prior to the entry of a final, non-appealable order (which order may be the order confirming the Plan) deeming any such Subject Contract assumed or rejected, and inclusion in the Cure Notice is not a final determination that any Subject Contract will, in fact, be assumed. The foregoing procedures appropriately and adequately protect the rights of counterparties to the Subject Contracts while resolving issues and/or objections to the Cure Amounts and requirements for assumption of the Subject Contracts.

80.     Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

81.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: August _7_, 2010
       Wilmington, Delaware

_____
Kevin J. Carey
Chief United States Bankruptcy Judge