IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
In re:                                            :    Chapter 11
                                                  :
ABITIBIBOWATER INC., et al., [1]                  :    Case No. 09-11296 (KJC)
                                                  :
                      Debtors.                    :    Jointly Administered
                                                  :
------------------------------------------------- x    Ref. Docket No. 2429
```

## ORDER (I) AUTHORIZING THE SALE OF ASSETS IN LUFKIN, TEXAS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS RELATED THERETO; (II) AUTHORIZING AND APPROVING PURCHASE SALE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; (IV) PAYING SELLER'S BROKER'S COMMISSION; AND (V) GRANTING RELATED RELIEF

Upon the Motion[2] of AbitibiBowater Inc. and its affiliated debtors and debtors-in-possession in the above-captioned cases (each a "Debtor," and collectively, the "Debtors"), requesting entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AbitibiBowater Inc. (6415), AbitibiBowater US Holding 1 Corp. (N/A), AbitibiBowater US Holding LLC (N/A), AbitibiBowater Canada Inc. (N/A), Abitibi-Consolidated Alabama Corporation (4396), Abitibi-Consolidated Corporation (9050), Abitibi-Consolidated Finance LP (4528), Abitibi Consolidated Sales Corporation (7144), Alabama River Newsprint Company (7247), Augusta Woodlands, LLC (9050), Bowater Alabama LLC (7106), Bowater America Inc. (8645), Bowater Canada Finance Corporation (N/A), Bowater Canadian Forest Products Inc. (N/A), Bowater Canadian Holdings Incorporated (N/A), Bowater Canadian Limited (N/A), Bowater Finance Company Inc. (1715), Bowater Finance II LLC (7886), Bowater Incorporated (1803), Bowater LaHave Corporation (N/A), Maritimes Inc. (N/A), Bowater Newsprint South LLC (1947), Bowater Newsprint South Operations LLC (0168), Bowater Nuway Inc. (8073), Bowater Nuway Mid-States Inc. (8290), Bowater South American Holdings Incorporated (N/A), Bowater Ventures Inc. (8343), Catawba Property Holdings, LLC (N/A), Coosa Pines Golf Club Holdings LLC (8702), Donohue Corp. (9051), Lake Superior Forest Products Inc. (9305) and Tenex Data Inc. (5913). On December 21, 2009, ABH LLC 1 (2280) and ABH Holding Company LLC (2398) (the "SPV Debtors") commenced chapter 11 cases, which cases are jointly administered with the above-captioned Debtors. The Debtors' and SPV Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1155 Metcalfe Street, Suite 800, Montreal, Quebec H3B 5H2, Canada.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Executed Purchase Sale Agreement.

of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of (A) of an order, substantially in the form annexed as Exhibit A to the Motion (the "Bid Procedures Order"), (i) approving bid procedures (the "Bid Procedures"), substantially in the form annexed as Exhibit 1 to the Bid Procedures Order, with respect to the sale (the "Sale") of the Debtors' assets associated with a paper mill (the "Lufkin Mill") located in Lufkin, Angelina County, Texas (altogether and inclusive of the Lufkin Mill, the "Lufkin Property") and owned by Abitibi-Consolidated Corporation ("ACC"); (ii) scheduling a hearing (the "Sale Hearing") on the Sale and setting objection and bidding deadlines with respect to the Sale; (iii) directing that notice of the Bid Procedures and the Sale be given, substantially in the form annexed as Exhibit 3 to the Bid Procedures Order (the "Auction and Sale Notice"); and (iv) granting related relief; and (B) an order, substantially in the form annexed to the Motion as Exhibit B (the "Sale Order"), (i) authorizing the Sale of the Lufkin Property of ACC free and clear of liens, claims encumbrances, and other interests pursuant to the terms of the form Purchase Sale Agreement (the "Purchase Sale Agreement"), substantially in the form annexed as Exhibit 2 to the proposed order approving the Bid Procedures; (ii) authorizing and approving the Purchase Sale Agreement; (iii) approving the assumption and assignment of executory contracts and unexpired leases, as necessary in connection with the Sale; and (iv) granting related relief; and the Court having entered the Bid Procedures Order on July 6, 2010 [Docket No. 2603]; and the Court having conducted the Sale Hearing to consider the approval of the Sale and related transactions pursuant to the terms of the Purchase Sale Agreement, dated August 3, 2010, annexed hereto as Exhibit I (the "Executed Purchase Sale Agreement"), between ACC and Verdant Industries, LLC (the "Purchaser"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Executed Purchase Sale Agreement and transactions

-2-

contemplated thereby; and the Court having reviewed and considered the Motion and any objections thereto, and the arguments of counsel made, and evidence adduced, related thereto; and upon the record of the Sale Hearing held before this Court on August 4, 2010, and the full record of these cases; and it appearing that the relief requested in the Motion is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      This Court has jurisdiction over the Motion and the transactions contemplated by the Executed Purchase Sale Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      A sound business purpose justifies the Sale of the Lufkin Property outside the ordinary course of business.

D.      Good and sufficient notice of the Motion and the relief sought therein has been given and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to parties in interest.

E.      Good and sufficient notice of the assumption and assignment of the Transferred Contracts has been given and no other or further notice is required and a reasonable opportunity to object or be heard has been offered to parties in interest.

-3-

068104.1001

F.     The Debtors solicited offers for, conducted an auction of, and selected the Successful Bidder for the Sale of the Lufkin Property in accordance with the Bid Procedures Order.

G.     The Auction was fair in substance and procedure.

H.     The Debtors have obtained a fair and reasonable price for the Sale of the Lufkin Property.

I.     The Purchaser's offer for the Lufkin Property, as embodied in the Executed Purchase Sale Agreement, is the highest and/or best offer received by the Debtors therefor.

J.     Consummation of the Sale transaction contemplated by the Successful Bid will provide the highest or otherwise best value for the Lufkin Property under the circumstances and is in the best interests of the Debtors and their estates.

K.     The Executed Purchase Sale Agreement has been negotiated by the Debtors and the Purchaser in good faith and at arm's length.

L.     The Purchaser is a "good faith purchaser" entitled to the benefits and protections of section 363(m) of the Bankruptcy Code.

M.     The Debtors and the Purchaser have not engaged in any conduct that would permit the Executed Purchase Sale Agreement or the transactions provided therein to be avoided under section 363(n) of the Bankruptcy Code.

N.     The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

O.     The relief requested in the Motion is an exercise of the Debtors' sound business judgment and is in the best interests of the Debtors and their estates and creditors.

-4-

P.     The entry of this Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is granted.

2.     All objections and responses to the Motion that have not been overruled, withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby overruled and denied.

3.     The Purchaser's offer for the Lufkin Property, as embodied in the Executed Purchase Sale Agreement, is the highest and best offer for the Lufkin Property and is hereby approved.

4.     The Executed Purchase Sale Agreement annexed hereto as <u>Exhibit I</u> is hereby approved pursuant to section 363(b) of the Bankruptcy Code and the Debtors are authorized to consummate and perform all of their obligations under the Executed Purchase Sale Agreement and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the Executed Purchase Sale Agreement.

5.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Sale by the Debtors to the Purchaser of the Lufkin Property and transactions related thereto, upon the closing under the Executed Purchase Sale Agreement, are authorized and approved in all respects.

6.     The Debtors are further authorized to assume and assign the contracts and unexpired leases (collectively, along with certain furniture and equipment located thereon, the "<u>Transferred Contracts</u>") attached hereto as Exhibit E to the Executed Purchase Sale Agreement. Pursuant to section 365 of the Bankruptcy Code, the assignment and assumption of the

-5-

Transferred Contracts, as identified in the Executed Purchase Sale Agreement, by the Purchaser, is hereby authorized and approved in all respects; provided, however, that the assumption of the Transferred Contracts by the Debtors is conditioned upon and subject to the occurrence of the closing of the Sale, subject to the Purchaser's payment of cure amounts listed therein. Assumption and assignment of the Transferred Contracts is in the best interests of the Debtors' estates and the counter-parties to the Transferred Contracts are adequately assured of future performance.

7.   Any party having the right to consent to the assumption or assigment of the Transferred Contracts that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

8.   Any non-debtor party to a Transferred Contract is hereby barred, enjoined and prohibited from asserting any claim or debt against the Debtors or their property or estates other than the Cure Amount, if any, or from offsetting, seeking to offset, recoup, deduct or set-off any Claims such party may have against the Debtors from any amounts that may be or may become due in the future to the Purchaser under such Transferred Contract.

9.   Adequate assurance of future performance has been demonstrated by or on behalf of the Purchaser with respect to the Transferred Contracts, and the Purchaser shall be entitled to have the Debtors assume such Transferred Contract, pursuant to section 365 of the Bankruptcy Code, and to have such Transferred Contract assigned to the Purchaser.

10.   After the payment of the Cure Amounts, if any, with respect to the Transferred Contracts, the Debtors are not and will not be in default in any of their obligations

-6-

under such contracts with the possible exception of defaults identified in section 365(b)(2) of the Bankruptcy Code, which defaults, if any, are null and void and without effect.

11.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Transferred Contract shall not be a waiver of such terms or conditions, or of the Debtors' or the Purchaser's rights to enforce every term and condition of the Transferred Contract.

12.     The transfer of the Debtors' interest in the Transferred Contracts and sale of the Lufkin Property to the Purchaser as provided in the Executed Purchase Sale Agreement is "AS IS-WHERE IS," without any representations or warranties of any kind from the Debtors.

13.     The Debtors' Broker who has filed the *Affidavit of Moody Younger in support of the Motion* on July 12, 2010 [Docket No. 2629], is hereby retained as a professional under section 327 of the Bankruptcy Code. The payment of the Broker's Commission out of the proceeds of the Sale is hereby approved, and the Debtors are authorized to pay the Broker's Commission at closing or at such other time as is reasonably practicable thereafter and in such manner as the Debtors reasonably determine.

14.     The terms of this Order shall be binding on the Purchaser and its successors, the Debtors, creditors of the Debtors and all other parties in interest in the Debtors' cases, and any successors of the Debtors, including any trustee or examiner appointed in these cases or upon a conversion of these cases to chapter 7 of the Bankruptcy Code.

15.     The Purchaser is a good faith purchaser entitled to the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

16.     The consideration provided by the Purchaser to the Debtors (i) is fair and reasonable, (ii) is the highest and best offer for the Lufkin Property, (iii) will provide a greater

recovery for the Debtors' creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession.

17.    The Debtors will timely pay Reliant Energy Retail Services, LLC ("Reliant") for all post-petition utility service provided pursuant to the pre-petition executory contract by and between the Debtors and Reliant, pursuant to which Reliant provides utility service to the Lufkin Property (the "Reliant Contract"), until the later of the following: (a) to the extent that the Reliant Contract is not assumed and assigned to the Purchaser, four (4) business days after Reliant receives a written request for termination of service provided that the Lufkin Property is accessible to transmission distribution service provider personnel for termination, provided however, that Reliant shall coordinate scheduling of any such termination in a prompt, commercially reasonable manner with either the Seller or the Purchaser, as applicable, or (b) the date of Closing of the Sale and assumption and assignment of the Reliant Contract to the Purchaser.

18.    The Debtors are authorized to transfer the Lufkin Property to the Purchaser free and clear of all liens, claims, interests and encumbrances of any kind or nature whatsoever, with such liens, claims, interests and encumbrances transferring and attaching to the proceeds of the Sale with the same validity and priority as such liens, claims, interests and encumbrances had in the Lufkin Property immediately prior to the consummation of the Sale, because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of liens, claims, interests and encumbrances who did not object to the Motion or the relief requested therein, or who interposed and then withdrew their objections, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the

-8-

Bankruptcy Code. Those holders of liens, claims, interests and encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their interests, if any, attach to the Lufkin Property.

19. Without prejudice to the rights of the Debtors or Wells Fargo Bank, N.A. (the "Agent"), in its capacity as administrative agent for the lenders from time to time party to that certain Credit and Guaranty Agreement dated as of April 1, 2008 among Abitibi Consolidated Company of Canada and Abitibi-Consolidated Inc. ("ACI") as borrowers, certain subsidiaries and affiliates of ACI, as guarantors, the Agent (as successor to Goldman Sachs Credit Partners L.P.), and the lenders from time to time party thereto (the "Term Loan Lenders"), as lenders, arising under the *Final Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(c)(2), 363(f), 363(l), 363(m), 364(c)(1), 364(e) and 365 of the Bankruptcy Code (1) Authorizing Entry into an Amended and Restated Guaranteed Receivables Purchase Facility, (2) Authorizing the Sale of Receivables and related Rights Pursuant to an Amended and Restated Securitization Program, (3) Authorizing ACSC to Cause Payment of Certain Fees Pursuant to the Engagement Letters, (4) Modifying the Automatic Stay, (5) Authorizing the Use of Cash Collateral, (6) Granting Superpriority Administrative Expense Claims, (7) Granting Adequate Protection, (8) Scheduling a Hearing and (9) Granting Other Related Relief* (the "Final Securitization Order") [Docket No. 595], the Debtors and the Agent have agreed to the following paragraphs 20 through 23 for the application of proceeds from the Sale.

20. Within two business days after the closing of the Sale, the Debtors will deposit the net cash proceeds of the Sale (the "Net Sale Proceeds") into a Wells Fargo bank account in the name of the Debtors (the "Designated Account") to be designated by the Agent.

YCST01:9812637.2                                                                 068104.1001

The Debtors shall not be permitted to withdraw all or any portion of the Net Sale Proceeds from the Designated Account other than in accordance with the terms and conditions of this Order.

21.    The Debtors may request the use of all or a portion of the Net Sale Proceeds by delivering a written request (the "Withdrawal Request") to the Agent and its counsel, with a copy to counsel for the Committee, stating the amount of the Net Sale Proceeds they seek to withdraw from the Designated Account (the "Requested Amount") and the intended use of the funds. The Agent shall have 10 business days from the date of receipt of the Withdrawal Request (the "Objection Period") to file a motion with the Court objecting to the Withdrawal Request (a "Withdrawal Objection Motion"). The Debtors shall not withdraw all or any portion of a Requested Amount prior to the expiration of the Objection Period without the written consent of the Agent and the Committee. For the avoidance of doubt, this Order shall not impair any right of the Committee to file a motion with the Court asserting objections to the Withdrawal Request.

22.    If no Withdrawal Objection Motion is filed by the Agent within the Objection Period, the Debtors may withdraw the Requested Amount from the Designated Account and use the funds in accordance with the Withdrawal Request.

23.    If the Agent files a Withdrawal Objection Motion within the Objection Period, the Debtors shall not be permitted to withdraw the Requested Amount from the Designated Account without a further order of this Court. The Agent agrees that it will not oppose a request by the Debtors for an expedited hearing on an Objection Motion.

24.    With respect to the transactions consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and the sale transaction consummated pursuant to this Order shall be binding upon and shall govern

-10-

the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

25.     This Court retains jurisdiction to interpret, implement and enforce the provisions of, and resolve any disputes arising under or related to, this Order and the Executed Purchase Sale Agreement, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith.

26.     Nothing contained in any chapter 11 plan confirmed in these cases or the order of confirmation confirming any chapter 11 plan, nor any order dismissing any case or converting it to chapter 7 liquidation shall conflict with or derogate from the provisions of the Executed Purchase Sale Agreement, any documents or instrument executed in connection therewith, or the terms of this Order.

27.     The failure specifically to include any particular provisions of the Executed Purchase Sale Agreement or any of the documents, agreements or instruments executed in connection therewith in this Order shall not diminish or impair the efficacy of such provision, document, agreement or instrument, it being the intent of the Court that the Executed

-11-

Purchase Sale Agreement and each document, agreement or instrument be authorized and approved in its entirety.

28.     The Executed Purchase Sale Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

29.     Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon its entry and the stay provided for in Bankruptcy Rules 6004(h) is hereby waived; (b) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors are authorized and empowered to, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

Dated: Wilmington, Delaware
       August  4  , 2010

_____
Kevin J. Carey
Chief United States Bankruptcy Judge

-12-