# Exhibit A

# Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ABITIBIBOWATER INC., *et al.*,[1] | ) | Case No. 09-11296 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Ref. Docket No. _____ |

**ORDER PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY
CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 9019:
(I) APPROVING SETTLEMENT AGREEMENTS BETWEEN THE
DEBTORS, BOWATER CATAWBA NOTE HOLDINGS I LLC,
BOWATER CATAWBA NOTE HOLDINGS II LLC, BOWATER SALUDA
NOTE HOLDINGS LLC AND CERTAIN NOTEHOLDERS; AND
(II) GRANTING RELATED RELIEF**

Upon the Motion[2] (the "*Motion*") of Debtor Bowater Incorporated (the "*Bowater*") and

its affiliated debtors and debtors-in-possession in the above captioned cases (collectively, with

Bowater, the "*Debtors*"), requesting entry of an order (the "*Order*"), pursuant to section 363(b)

of title 11 of the United States Code (the "*Bankruptcy Code*") and Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"): (i) approving settlement agreements,

---

1 The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
AbitibiBowater Inc. (6415), AbitibiBowater US Holding 1 Corp. (N/A), AbitibiBowater US Holding LLC (N/A),
AbitibiBowater Canada Inc. (N/A), Abitibi-Consolidated Alabama Corporation (4396), Abitibi-Consolidated
Corporation (9050), Abitibi-Consolidated Finance LP (4528), Abitibi Consolidated Sales Corporation (7144),
Alabama River Newsprint Company (7247), Augusta Woodlands, LLC (9050), Bowater Alabama LLC (7106),
Bowater America Inc. (8645), Bowater Canada Finance Corporation (N/A), Bowater Canadian Forest Products Inc.
(N/A), Bowater Canadian Holdings Incorporated (N/A), Bowater Canadian Limited (N/A), Bowater Finance
Company Inc. (1715), Bowater Finance II LLC (7886), Bowater Incorporated (1803), Bowater LaHave Corporation
(N/A), Bowater Maritimes Inc. (N/A), Bowater Newsprint South LLC (1947), Bowater Newsprint South Operations
LLC (0168), Bowater Nuway Inc. (8073), Bowater Nuway Mid-States Inc. (8290), Bowater South American
Holdings Incorporated (N/A), Bowater Ventures Inc. (8343), Catawba Property Holdings, LLC (N/A), Coosa Pines
Golf Club Holdings LLC (8702), Donohue Corp. (9051), Lake Superior Forest Products Inc. (9305) and Tenex Data
Inc. (5913). On December 21, 2009, ABH LLC 1 (2280) and ABH Holding Company LLC (2398) (the "SPV
Debtors") commenced chapter 11 cases, which cases are jointly administered with the above-captioned Debtors. The
Debtors' and SPV Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1155
Metcalfe Street, Suite 800, Montreal, Quebec H3B 5H2, Canada.

2      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Motion and respective Settlement Agreements, Exhibit B thereto.

substantially in the form attached hereto as Exhibit A (individually, a "*Settlement Agreement*" and, together, the "*Settlement Agreements*"), between Bowater and, as applicable, Bowater Catawba Note Holdings I LLC ("*Catawba I*"), Bowater Catawba Note Holdings II LLC ("*Catawba II*"), Bowater Saluda Note Holdings LLC ("*Saluda*") and the holders of certain notes issued by Catawba I, Catawba II and Saluda (the "*Noteholders*", and along with Bowater, Catawba I, Catawba II and Saluda, the "*Parties*") and (ii) authorizing Bowater to perform its obligations under the Settlement Agreements; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion and opportunity for objection having been given; and this Court having reviewed and considered the Motion and any objections thereto; and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     This Court has core jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and this matter is a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The Debtors have articulated good and sufficient cause for, among other things: (a) the transfer, conveyance and assignment of all of Bowater's membership interests in Catawba I, Catawba II and Saluda to Lord Securities Corporation or any entity designated by it to hold the ownership interest (*"Lord"*) pursuant to which Lord shall thereafter be the sole member of Catawba I, Catawba II and Saluda with all powers, rights and privileges of ownership attendant thereto and (b) agreeing that the Settlement Agreements with respect to Catawba II and Saluda shall be without prejudice to the right (i) of the Collateral Agent and/or the holders of the Notes to pursue a claim against Bowater in the Bankruptcy Case with respect to the Make-Whole Guaranties executed with respect to the Notes issued by Catawba II and Saluda  or (ii) the right of Bowater to contest any claim under such Make-Whole Guaranties by the Collateral Agent or the holder of any Note, all rights, claims, obligations, defenses, counterclaims and causes of action with respect to the Make-Whole Guaranties and the Make-Whole Amounts being hereby reserved by the Parties (the *"Make-Whole Claim Reservation of Rights"*).

C.     Under the circumstances, good and sufficient notice of the relief sought in the Motion has been given and no further notice is required.

D.     The Settlement Agreements are fair, reasonable and appropriate and benefit the Debtors' estates, their creditors and other parties in interest.  The Settlement Agreements balance the risks of litigation with respect to the Noteholders' potential claims with respect to the Notes and the Note Agreements and the abandonment by Bowater of the QSPEs, while benefiting the Debtors' estates by relieving Bowater of maintaining subsidiaries in which it has no equity and which have defaulted on indebtedness in an aggregate principal amount of $193,365,000.

E.    The Debtors have demonstrated a compelling and sound business justification for authorizing the relief requested in the Settlement Agreements, including, among other things, the transfer of Bowater's membership interests in the QSPEs to Lord.

Based on the foregoing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.    The Settlement Agreements are each approved.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Settlement Agreements and, in accordance with the terms thereof and with the agreement of the Parties thereto.

2.    Bowater is authorized to enter into the Make-Whole Claim Reservation of Rights.

3.    Bowater is authorized to transfer of all of its membership interests in Catawba I, Catawba II and Saluda to Lord and to take any and all actions necessary or appropriate to transfer to Lord all right, title and interest of Bowater in and to its membership interests in Catawba I, Catawba II and Saluda (which interests constitute 100% of the membership interests in each of Catawba I, Catawba II and Saluda) to Lord with all powers, rights and privileges of ownership of each of Catawba I, Catawba II and Saluda attendant thereto without recourse, warranty or representation of any kind, express or implied, other than Bowater is the legal and beneficial owner of such membership interest.  Such transfer shall be free and clear of any lien, claim or encumbrance of any kind created by or through the Debtors or any of their affiliates and free of any claim of successor liability.  Subject to the Make-Whole Claim Reservation of Rights, (a) Bowater shall not assert or claim any rights to any future cash flow from the Pledged Collateral (as defined in the respective Note Purchase Agreements), including the Letter of Credit and (b) neither Bowater nor any of the other Debtors shall have any obligation or liability with respect to the Notes, the Note Agreements or any other aspect of the Note Transactions.  Lord or its

designee as managing agent for or holder of 100% of the membership interest in the QSPEs shall not be liable for any claims, causes of action or liabilities of Bowater, the QSPEs or any other person arising from the Notes, the Note Agreement, the Make-Whole Guaranty, the Timber Notes or the Collateral Documents or any other obligation of Bowater, the QSPEs or any other person whatsoever related thereto.

4.      The Debtors are authorized and empowered to, and may in their discretion take any action and perform any act necessary to implement and effectuate the terms of this Order or the Settlement Agreements.

5.      This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

Dated: Wilmington, Delaware

_____ __, 2010

_____
Kevin J. Carey
Chief United States Bankruptcy
Judge

# Exhibit A

## Settlement Agreements

# SETTLEMENT AGREEMENT
## [CATAWBA I]

This Settlement Agreement (*"Agreement"*) is dated as of _____, 2010 by and between Bowater Catawba Note Holdings I LLC, a Delaware Limited Liability Company (*"Company"* or *"Catawba I"*), Bowater Incorporated, a Delaware corporation (*"Bowater"*) now a Debtor in the Chapter 11 Case pending in the United States Bankruptcy Court for the District of Delaware, Case No. 09-11296 (KSC) (the *"Bankruptcy Case"*), each of the holders of Notes identified on the signature pages hereto (the *"Noteholders"*), and The Bank of New York Mellon Trust Company, N.A., a New York banking corporation, in its capacity as collateral agent for the holders of the Notes (in such capacity, the *"Collateral Agent"*; the Company, Bowater, the Noteholders and the Collateral Agent are hereinafter referred to collectively as the *"Parties"*). Capitalized terms used and not otherwise defined in this Agreement shall have the meaning ascribed to such terms in that certain Note Purchase Agreement dated as of December 27, 2001 between the Debtor and the Noteholders (the *"Note Agreement"*).

## RECITALS

A.      Whereas, on [November 28], 2001, Bowater sold certain timberlands to Teredo Timber II, LLC (the *"Purchaser"*) in exchange for a promissory note executed by the Purchaser in favor of Bowater in the principal amount of $19,288,366 (the *"Timber Note"*), bearing interest at a floating rate per annum, secured by an irrevocable standby letter of credit in the stated amount of $19,557,318 issued by Wachovia Bank, N.A. (the *"Letter of Credit"*), and the principal amount of which is payable in a single installment on December 28, 2016 (the *"Timberland Sales Transaction"*).

B. Whereas, following the closing of the Timberland Sales Transaction, Bowater formed the Company as a qualified special purpose entity (*"QSPE"*) with Bowater as the sole member and contributed the Timber Note and Letter of Credit to the capital of the Company.

C. Whereas, on December 27, 2001, following the contribution of the Timber Note and the Letter of Credit to the capital of the Company, the Company issued $17,360,000 principal amount of its Floating Rate Senior Secured Notes due December 27, 2016 (the *"Notes"*), secured by a pledge of the Timber Note and the Letter of Credit to the Noteholders. In exchange for an upfront payment from the sale of the Notes, the Company pledged, among other things, the Timber Note and Letter of Credit as collateral to the Collateral Agent, for the benefit of the Noteholders, and agreed to pay the income received from the issuer of the Timber Note to the Noteholders to the extent necessary to pay scheduled principal and interest on the Notes and all other Obligations (as defined herein) due thereon.

D. [Reserved]

E. Whereas, Bowater continues to be the sole member of the Company.

F. Whereas, The Bank of New York Mellon Trust Company, N.A. has been appointed Collateral Agent under the Collateral Agency Agreement and in this capacity is a party to the Pledge Agreement.

G. Whereas, on April 16, 2009, Bowater and certain of its Affiliates, but not the Company, filed voluntary petitions (the *"Petition"*) under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware

(*"Bankruptcy Case"*) and certain of its Affiliates sought creditor protection under the Companies' Creditors Arrangement Act (Canada) with the Superior Court of Quebec in Canada.

H.     Whereas, under Section 11(f) of the Note Agreement, the filing of the Petition by Bowater in the Bankruptcy Case constitutes an Event of Default under the Note Agreement (the *"Existing Event of Default"*).

I.     Whereas, the Note Agreement provides that, if an Event of Default occurs under Section 11(f), the Notes are automatically accelerated as of the date of such Event of Default under Section 12.1 of the Note Agreement and become immediately due and payable and default interest at the then current rate of interest applicable to the Notes plus 2% per annum (the *"Default Rate"*) accrues on the Notes.

J.     Whereas, notwithstanding the acceleration of the Notes, neither the Company, the Collateral Agent nor the holders of the Notes are entitled to accelerate the repayment of the Timber Note nor to draw upon the Letter of Credit for the repayment of any principal on the Notes prior to the maturity of the Timber Note.

K.     Whereas, since the Company has no other assets other than the Timber Note and its interest in the Letter of Credit pledged as security therefor, the Collateral Agent and the Noteholders will be unable to collect any payments on the Notes except as payments are made on the Timber Note.

L.     Whereas, the payments made under the Timber Note are expected be sufficient to pay the interest on the Notes at the non-Default Rate plus all or a portion of additional interest

payable on the Notes by reason of the application of the Default Rate thereon and, upon the maturity of the Timber Note, the principal amount of the Notes.

M.     [Reserved]

N.     Whereas, the Company and Bowater acknowledge the pendency of the Existing Event of Default, the automatic acceleration of all principal of $17,360,000 and accrued interest due on the Notes and the Noteholders' right to receive interest at the Default Rate.

O.     Whereas, as a result of the imposition of the default rate of interest on the Notes, Bowater has no equity remaining in the Company.

P.     Whereas, the Company acknowledges that the Collateral Agent holds a lien on and security interest in the Teredo Timber Note Instruments, including the Letter of Credit, and the other collateral pledged as defined and described in and pursuant to the Pledge Agreement (the *"Pledged Collateral"*), including but not limited to the Collateral Accounts.

Q.     Whereas, the Noteholders hold a majority in principal amount of the outstanding Notes.

R.     Whereas, the Noteholders, the Collateral Agent, the Company and Bowater (subject to the approval of the Court in the Bankruptcy Case) wish to settle all disputes between the parties by *inter alia* Bowater transferring, at the request of the Noteholders, to Lord Securities Corporation or any entity designated by it to hold the ownership interest (*"Lord"*) the membership interest in the Company.

S. Whereas, the Parties, through a series of good faith negotiations, reached agreements with respect to the resolution of all disputes with respect to these matters and now desire to document the understandings among them.

## AGREEMENT

Now therefore, in consideration of the promises and mutual agreements set forth herein and for other good and valuable consideration between the parties, including the promises and undertakings recited therein, the receipt of which is hereby acknowledged, and in the case of Bowater, subject to the approval of the Court in the Bankruptcy Case, the parties hereby agree as follows:

1. **Recitals.** Each party acknowledges that each of the Recitals set forth above in this Agreement is true and correct to the best of their information, knowledge and belief as of the date hereof.

2. **Court Approval.** This Agreement is subject to the entry in the Bankruptcy Case of an enforceable order of the Bankruptcy Court approving the same after appropriate notice and opportunity for hearing in accordance with the Bankruptcy Code Rule 9019 of the Federal Rules of Bankruptcy Procedure and any applicable Local Rules of the Bankruptcy Court prior to the Effective Date of any Plan of Reorganization of Bowater. The Court Order shall authorize and approve the transfer, conveyance and assignment of all of the membership interests in the Company held by Bowater to Lord, free and clear of any lien, claim or encumbrance of any kind, with all powers, rights and privileges of ownership of the Company attendant thereto. Upon

execution of this Agreement, all of the parties shall cooperate with each other to expeditiously seek entry of such an order.

3. The Collateral Agent and the Noteholders acknowledge that Bowater has no obligation or liability with respect to the Notes, the Note Agreement or any of the other instruments, documents and agreements executed pursuant thereto or in connection therewith.

4. Transfer of Guarantor's Interest in the Company. Subject to, and effective upon the entry of, the Order of the Bankruptcy Court approving this Settlement Agreement, Bowater hereby transfers, conveys and assigns all right, title and interest of Bowater in and to its membership interest in the Company (which interest constitutes 100% of the membership interests in the Company) to Lord without recourse, warranty or representation of any kind, express or implied, other than Bowater is the legal and beneficial owner of such membership interest. Bowater shall execute documents which are mutually acceptable to the Parties evidencing the transfer of Bowater's interest in the Company to Lord. Bowater shall not assert or claim any rights to any future cash flow from the Pledged Collateral, including the Letter of Credit. Lord shall not be liable for any claims, causes of action or liabilities of Bowater arising from the Notes, the Note Agreement, the Guaranty, the Timber Note or the Collateral Documents or any other obligation of Bowater whatsoever related thereto.

5. Reaffirmation of Obligation by the Company. The Company reaffirms:

(a) the Collateral Agent's security interest in the Teredo Timber Note Instruments and other Pledged Collateral;

(b)     the obligations of the Company under the Note Agreement and Notes, including, without limitation, principal and interest on the Notes, including at the Default Rate and payment of fees and expenses as provided for in the Note Agreement (*"Obligations"*); and

(c)     its prior pledge and assignment to the Collateral Agent for the benefit of the Noteholders, pursuant to the Pledge Agreement, of a first priority security interest in the following:

(i)     the Pledged Note Instruments (as defined in the Pledge Agreement) and the instruments or securities evidencing such Pledged Note Instruments, and all rights relating thereto (including without limitation, all Letter of Credit rights and rights to exercise remedies, make drawings on the Letter of Credit, grant waivers and consent to amendments thereunder), and all interest, cash, instruments and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Note Instruments;

(ii)     all rights of Pledgor under the Teredo Timber Note Instrument Assignment and Contribution Agreement;

(iii)     the Liquid Collateral (as defined in the Pledge Agreement); and

(iv)     to the extent not covered by clauses (i) though (iii) above, all proceeds of any or all of the foregoing Pledged Collateral. For purposes of this Agreement, the term "proceeds" includes whatever is receivable or received when Pledged Collateral or proceeds are sold, exchanged, collected or otherwise disposed of, whether such

disposition is voluntary or involuntary, and includes, without limitation, proceeds of any indemnity or guaranty payable to Pledgor or Collateral Agent from time to time with respect to any of the Pledged Collateral.

6. **Further Company Reaffirmation.** The Company irrevocably affirms all of its covenants, agreements and duties under the Note Agreement and the Notes and all documents and agreements referred to in the Note Agreement, including, but not limited to, the Obligations. The Company agrees it has no defense, right of setoff, counterclaim or claim of recoupment that it can assert to the payment and performance of the Obligations under the Note Agreement and the Notes and waives any and all rights to any future cash flow from the Pledged Note Instruments, including the Letter of Credit, or any other Pledged Collateral. The Company acknowledges the Collateral Agent and Noteholders have all rights to the cash flow, direct payments out of the Pledged Collateral, including but not limited to payments on the Timber Note and Collateral Accounts, and the ability to draw on the Letter of Credit and exercise other remedies if necessary. Given the Event of Default under the Note Agreement and this Settlement Agreement, the Company shall not assert or claim any rights to any future cash flow from the Pledged Collateral, including the Letter of Credit, and acknowledges that Lord or any successor to it shall not be liable for any claims, cause of action or liabilities of the Company or any other person arising from the Notes, the Note Agreement, the Guaranty, the Timber Note or the Collateral Documents or any other Obligation of the Company or any other person whatsoever related thereto.

7. **Settlement of Existing Event of Default.** The Company, Noteholders and Collateral Agent agree that (a) interest at the Default Rate (2% per annum above the rate of

interest provided for in the Notes) for the period from April 16, 2009 (the date of the Event of Default) to the date of maturity shall be accruing and due and payable at stated maturity of the Notes unless a majority of Noteholders have requested earlier payment of all or a portion thereof on a pro rata basis (*"Requested Payment"*) and provided funds sufficient to pay such Requested Payment of accrued Default Rate interest are held by the Collateral Agent as well as funds sufficient to pay any and all other obligations that are due and payable at that time, (b) the Noteholders holding at least a majority in aggregate principal amount of the Notes (the *"Majority Noteholders"*) may direct payment of any funds held by the Collateral Agent at any time prior to maturity to make the Requested Payment, provided there are sufficient funds held by the Collateral Agent to make such Requested Payment and pay any and all other Obligations due and (c) notwithstanding this Settlement Agreement, the Collateral Agent shall continue to pay scheduled non-default interest and principal and expenses as provided for in the Notes and Note Agreement.

8.     **Fees and Expenses.** To further resolve the issue of the fees and expenses of the Collateral Agent and the Noteholders, the Company, the Noteholders and Collateral Agent agreed that in recognition that all cash flows, recoveries and rights to payment under the underlying Timber Note, Letter of Credit and all other Pledged Collateral are pledged to the Collateral Agent for the benefit of Noteholders, in order to resolve the obligations to pay the Noteholders the principal amount outstanding on the Notes plus all accrued and unpaid interest on the Notes, including interest at the Default Rate, due to the Existing Event of Default and fees and expenses incurred by reason of the Existing Event of Default and the obligation to pay to the Noteholders and the Collateral Agent all of their fees and expenses (the *"Collateral Trust*

*Expenses"*), including attorneys fees and the ongoing fees of Lord incurred by reason of the Guarantor's default under the Notes and Note Agreement and the Guarantor's transfer of the ownership interest in the Company to Lord and Lord's ongoing fees, expenses and charges (*"Third-Party Expenses"*), the foregoing shall be resolved by acknowledgment that the Collateral Trust Expenses, including Third-Party Expenses, shall be due and payable from the cash flow from the underlying Promissory Note held by the Collateral Agent and the other Pledged Collateral. Since the Collateral Trust Expenses are paid from Pledged Collateral, it will not be necessary for the Collateral Agent, Noteholders, Lord or their counsel to file fee applications or make any other submission in the Bankruptcy Case, and they shall be paid pursuant to the terms of the Note Agreement and Collateral Agency Agreement and as directed by the Noteholders. The Third-Party Expenses shall be paid before any other Collateral Trust Expenses, which shall be paid before any payment to the Noteholders.

9. **Limitation on Bowater's Responsibilities.** Bowater shall after the date of the Court Order approving this Settlement Agreement and the effective transfer of the membership interest in the Company from Bowater to Lord have no responsibility, liability or obligation for the Company or any action of the Company. Bowater is not responsible for, shall have no liability for nor does it join in or make the statements, agreements or affirmations of the Company contained in paragraphs 4, 5, 6, 7 and 8 above.

10. **Execution of this Agreement by Lord.** Lord shall execute this Settlement Agreement on behalf of the Company immediately after the entry of the Court Order authorizing and effectuating the transfer of the membership interest in the Company to Lord.

11.    Approval of Compromise.  Within 5 days of the date of execution hereof, Bowater shall serve on all parties required to be served, and file with the Bankruptcy Court, a notice of its intent to seek court approval of this Agreement and shall use reasonable best efforts to have this Agreement approved pursuant to Bankruptcy Rule 9019, which shall be in form and substance acceptable to the Parties.

12.    Successors and Assigns.  This Agreement shall bind and inure to the benefit of the Parties and their respective successors and assigns; *provided, however,* that the Company may not assign this Agreement or any of its rights and duties or obligations hereunder without the prior written consent of the Noteholders.

13.    No Waiver.  No consent or waiver under this Agreement shall be effective unless made in writing and signed by the Party consenting or waiving.  No waiver of any breach or default shall be deemed a waiver of any breach or default thereafter occurring.

14.    Controlling Law.  This Agreement and any instrument or agreement executed in connection with this Agreement shall be governed and construed under the internal laws of the State of New York.

15.    Neutral Construction.  Each of the Parties has been involved in the negotiation, review and execution of this Agreement and each has had the opportunity to receive independent legal advice from an attorney or attorneys of its choice with respect to the advisability of the making and execution of this Agreement.  In the event of any dispute or controversy regarding this Agreement, the Parties shall be considered to be the joint authors of this Agreement and no provision of this Agreement shall be interpreted against a Party because of authorship.

16.     Severability.  In the event that any provision or portion of this Agreement is held to be unenforceable or invalid by any court of competent jurisdiction the validity and enforceability of the remaining provisions or portions thereof shall not be affected thereby.

17.     Authority.  Each individual executing this Agreement hereby severally represents and warrants to each person so signing (and to each other entity for which another person may be signing) that he or she has been duly authorized to execute and deliver this Agreement in the capacity of the person or entity set forth for which he or she signs.

18.     Execution In Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.   A signature by facsimile transmission or other electronic means that allows the identity of the signer to be reasonably confirmed shall be as good and binding as an original signature.

19.     Captions.  The captions contained in this Agreement are for the convenience of the Parties and shall not be deemed or construed as in any way limiting or extending the language of the provisions to which said captions may refer.

20.     No Third Party Beneficiaries.  Nothing contained in the Agreement is intended to nor shall it be construed or deemed to confer any rights, powers or privileges on any person or legal entity other than the Noteholders, the Debtor and Lord and any successor-in-interest to any of them.

21.     Further Assurances.  Each Party shall promptly execute such other documents and take all other action as may reasonably be requested by the other Party to implement the provisions of or recognize each other's rights under this Agreement or the Note Agreement, the Notes or other Collateral Documents.

**SIGNATURES TO FOLLOW**

# SETTLEMENT AGREEMENT
## [CATAWBA II]

This Settlement Agreement (*"Agreement"*) is dated as of _____, 2010 by and between Bowater Catawba Note Holdings II LLC, a Delaware Limited Liability Company (*"Company"* or *"Catawba II"*), Bowater Incorporated, a Delaware corporation (*"Bowater"*) now a Debtor in the Chapter 11 Case pending in the United States Bankruptcy Court for the District of Delaware, Case No. 09-11296 (KSC) (the *"Bankruptcy Case"*), each of the holders of Notes identified on the signature pages hereto (the *"Noteholders"*), and The Bank of New York Mellon Trust Company, N.A., a New York banking corporation, in its capacity as collateral agent for the holders of the Notes (in such capacity, the *"Collateral Agent"*; the Company, Bowater, the Noteholders and the Collateral Agent are hereinafter referred to collectively as the *"Parties"*). Capitalized terms used and not otherwise defined in this Agreement shall have the meaning ascribed to such terms in that certain Note Purchase Agreement dated as of December 27, 2001 between the Debtor and the Noteholders (the *"Note Agreement"*).

## RECITALS

A.    Whereas, on November 28, 2001, Bowater sold certain timberlands to First Union Development Corporation (the *"Purchaser"*) in exchange for a promissory note executed by the Purchaser in favor of Bowater in the principal amount of $96,449,655.00 (the *"Timber Note"*), bearing interest at the rate of 6.54% per annum, secured by an irrevocable standby letter of credit in the stated amount of $100,129,210 issued by Wachovia Bank, N.A. (the *"Letter of Credit"*), and the principal amount of which is payable in a single installment on December 28, 2016 (the *"Timberland Sales Transaction"*).

B.      Whereas, following the closing of the Timberland Sales Transaction, Bowater formed the Company as a qualified special purpose entity ("*QSPE*") with Bowater as the sole member and contributed the Timber Note and Letter of Credit to the capital of the Company.

C.      Whereas, on December 27, 2001, following the contribution of the Timber Note and the Letter of Credit to the capital of the Company, the Company issued $86,805,000 principal amount of its 6.85% Senior Secured Notes due December 27, 2016 (the *"Notes"*), secured by a pledge of the Timber Note and the Letter of Credit to the Noteholders. In exchange for an upfront payment from the sale of the Notes, the Company pledged, among other things, the Timber Note and Letter of Credit as collateral to the Collateral Agent, for the benefit of the Noteholders, and agreed to pay the income received from the issuer of the Timber Notes to the Noteholders to the extent necessary to pay scheduled principal and interest on the Notes and all other Obligations (as defined herein) due thereon.

D.      Whereas, in connection with the transactions contemplated by the Note Agreement, Bowater agreed to guaranty payment of the Make-Whole Amount as defined in the Note Agreement up to an amount equal to 10% of the aggregate outstanding principal amount of the Notes pursuant to a Limited Guaranty dated December 27, 2001 executed in favor of the Collateral Agent (*"Make-Whole Guaranty"*). The Guarantor's interest in the Company consists principally of its membership interest in the Company which constitutes 100% of the outstanding membership interests in the Company.

E.      Whereas, Bowater continues to be the sole member of the Company.

F.     Whereas, The Bank of New York Mellon Trust Company, N.A. has been appointed Collateral Agent under the Collateral Agency Agreement and in this capacity is a party to the Pledge Agreement.

G.     Whereas, on April 16, 2009, Bowater and certain of its Affiliates, but not the Company, filed voluntary petitions (the *"Petition"*) under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (*"Bankruptcy Case"*) and certain of its Affiliates sought creditor protection under the Companies' Creditors Arrangement Act (Canada) with the Superior Court of Quebec in Canada.

H.     Whereas, under Section 11(f) of the Note Agreement, the filing of the Petition by Bowater in the Bankruptcy Case constitutes an Event of Default under the Note Agreement (the *"Existing Event of Default"*).

I.     Whereas, the Note Agreement provides that, if an Event of Default occurs under Section 11(f), the Notes are automatically accelerated as of the date of such Event of Default under Section 12.1 of the Note Agreement and become immediately due and payable and default interest at the then current rate of interest applicable to the Notes plus 2% per annum (the *"Default Rate"*) accrues on the Notes.

J.     Whereas, notwithstanding the acceleration of the Notes, neither the Company, the Collateral Agent nor the holders of the Notes are entitled to accelerate the repayment of the Timber Note nor to draw upon the Letter of Credit for the repayment of any principal on the Notes prior to the maturity of the Timber Note.

K.     Whereas, since the Company has no other assets other than the Timber Note and its interest in the Letter of Credit pledged as security therefor, the Collateral Agent and the Noteholders will be unable to collect any payments on the Notes except as payments are made on the Timber Note.

L.     Whereas, the payments made under the Timber Note are expected be sufficient to pay the interest on the Notes at the non-Default Rate plus all or a portion of additional interest payable on the Notes by reason of the application of the Default Rate thereon and, upon the maturity of the Timber Note, the principal amount of the Notes.

M.     Whereas, the Note Agreement provides that, if an Event of Default occurs under Section 11(f), the holders of the Notes are entitled to receive the Make-Whole Amount, but the Company and Bowater believe that payment of the Make-Whole Amount, which is intended to compensate the holders of the Notes for income lost due to the prepayment of the Notes, would represent a double recovery for the holders of the Notes since the principal amount of the Notes will not be prepaid due to the inability to accelerate the principal amount of the Timber Note. The Noteholders and the Collateral Agent dispute this and assert that, under Sections 11(f) and 12.1 of the Note Agreement, the Notes are automatically accelerated as of the date of such Event of Default, are immediately due and payable and the Noteholders are also automatically entitled to payment of the Make-Whole Amount and Default Interest until all Obligations under the Note Agreement are paid in full.

N.     Whereas, the Company and Bowater acknowledge the pendency of the Existing Event of Default, the automatic acceleration of all principal of $86,805,000 and accrued interest due on the Notes and the Noteholders' right to receive interest at the Default Rate.

O.     Whereas, as a result of the imposition of the default rate of interest on the Notes, Bowater has no equity remaining in the Company.

P.     Whereas, the Company acknowledges that the Collateral Agent holds a lien on and security interest in the First Union Development Corporation Note Instruments, including the Letter of Credit, and the other collateral pledged as defined and described in and pursuant to the Pledge Agreement (the *"Pledged Collateral"*), including but not limited to the Collateral Accounts.

Q.     Whereas, the Noteholders hold a majority in principal amount of the outstanding Notes.

R.     Whereas, the Noteholders, the Collateral Agent, the Company and Bowater (subject to the approval of the Court in the Bankruptcy Case) wish to settle all disputes between the parties by *inter alia* (i) Bowater transferring, at the request of the Noteholders, to Lord Securities Corporation or any entity designated by it to hold the ownership interest (*"Lord"*) the membership interest in the Company, and (ii) agreeing that this Agreement shall be without prejudice to the right (a) of the Collateral Agent and/or the holders of the Notes to pursue a claim against Bowater in the Bankruptcy Case with respect to the Make-Whole Guaranty or (b) the right of Bowater to contest any claim under the Make-Whole Guaranty by the Collateral Agent or the holder of any Note, all rights, claims, obligations, defenses, counterclaims and causes of

action with respect to the Make-Whole Guaranty and the Make-Whole Amount being hereby reserved by the Parties (the *"Make-Whole Claim Reservation of Rights"*).

S.   Whereas, the Parties, through a series of good faith negotiations, reached agreements with respect to the resolution of all disputes with respect to these matters and now desire to document the understandings among them.

## AGREEMENT

Now therefore, in consideration of the promises and mutual agreements set forth herein and for other good and valuable consideration between the parties, including the promises and undertakings recited therein, the receipt of which is hereby acknowledged, and in the case of Bowater, subject to the approval of the Court in the Bankruptcy Case, the parties hereby agree as follows:

1.   Recitals.  Each party acknowledges that each of the Recitals set forth above in this Agreement is true and correct to the best of their information, knowledge and belief as of the date hereof.

2.   Court Approval.  This Agreement is subject to the entry in the Bankruptcy Case of an enforceable order of the Bankruptcy Court approving the same after appropriate notice and opportunity for hearing in accordance with the Bankruptcy Code Rule 9019 of the Federal Rules of Bankruptcy Procedure and any applicable Local Rules of the Bankruptcy Court prior to the Effective Date of any Plan of Reorganization of Bowater.  The Court Order shall authorize and approve the transfer, conveyance and assignment of all of the membership interests in the Company held by Bowater to Lord, free and clear of any lien, claim or encumbrance of any kind,

with all powers, rights and privileges of ownership of the Company attendant thereto. Upon execution of this Agreement, all of the parties shall cooperate with each other to expeditiously seek entry of such an order.

3. **Reservation of Rights.** Bowater, the Company, the Noteholders and Collateral Agent agree to the Make-Whole Claim Reservation of Rights. The Collateral Agent and the Noteholders acknowledge that Bowater has no obligation or liability with respect to the Notes, the Note Agreement or any of the other instruments, documents and agreements executed pursuant thereto or in connection therewith except as set forth in the Make-Whole Guaranty.

4. **Transfer of Guarantor's Interest in the Company.** Subject to, and effective upon the entry of, the Order of the Bankruptcy Court approving this Settlement Agreement, Bowater hereby transfers, conveys and assigns all right, title and interest of Bowater in and to its membership interest in the Company (which interest constitutes 100% of the membership interests in the Company) to Lord without recourse, warranty or representation of any kind, express or implied, other than Bowater is the legal and beneficial owner of such membership interest. Bowater shall execute documents which are mutually acceptable to the Parties evidencing the transfer of Bowater's interest in the Company to Lord. Subject to the Make-Whole Claim Reservation of Rights, Bowater shall not assert or claim any rights to any future cash flow from the Pledged Collateral, including the Letter of Credit. Lord shall not be liable for any claims, causes of action or liabilities of Bowater arising from the Notes, the Note Agreement, the Guaranty, the Timber Note or the Collateral Documents or any other obligation of Bowater whatsoever related thereto.

5. **Reaffirmation of Obligation by the Company.** The Company reaffirms:

(a) the Collateral Agent's security interest in the First Union Development Corporation Note Instruments and other Pledged Collateral;

(b) the obligations of the Company under the Note Agreement and Notes, including, without limitation, principal and interest on the Notes, including at the Default Rate, payment of fees and expenses as provided for in the Note Agreement and subject to the Make-Whole Claim Reservation of Rights (*"Obligations"*); and

(c) its prior pledge and assignment to the Collateral Agent for the benefit of the Noteholders, pursuant to the Pledge Agreement, of a first priority security interest in the following:

(i) the Pledged Note Instruments (as defined in the Pledge Agreement) and the instruments or securities evidencing such Pledged Note Instruments, and all rights relating thereto (including without limitation, all Letter of Credit rights and rights to exercise remedies, make drawings on the Letter of Credit, grant waivers and consent to amendments thereunder), and all interest, cash, instruments and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Note Instruments;

(ii) all rights of Pledgor under the First Union Development Corporation Note Instrument Assignment and Contribution Agreement;

(iii) the Liquid Collateral (as defined in the Pledge Agreement); and

(iv) to the extent not covered by clauses (i) though (iii) above, all proceeds of any or all of the foregoing Pledged Collateral. For purposes of this Agreement, the term "proceeds" includes whatever is receivable or received when Pledged Collateral or proceeds are sold, exchanged, collected or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, proceeds of any indemnity or guaranty payable to Pledgor or Collateral Agent from time to time with respect to any of the Pledged Collateral.

6. **Further Company Reaffirmation.** The Company irrevocably affirms all of its covenants, agreements and duties under the Note Agreement and the Notes and all documents and agreements referred to in the Note Agreement, including, but not limited to, the Obligations. The Company agrees it has no defense, right of setoff, counterclaim or claim of recoupment that it can assert to the payment and performance of the Obligations under the Note Agreement and the Notes and waives any and all rights to any future cash flow from the Pledged Note Instruments, including the Letter of Credit, or any other Pledged Collateral. The Company acknowledges the Collateral Agent and Noteholders have all rights to the cash flow, direct payments out of the Pledged Collateral, including but not limited to payments on the Timber Note and Collateral Accounts, and the ability to draw on the Letter of Credit and exercise other remedies if necessary. Given the Event of Default under the Note Agreement and this Settlement Agreement, the Company shall not assert or claim any rights to any future cash flow from the Pledged Collateral, including the Letter of Credit, and acknowledges that Lord or any successor to it shall not be liable for any claims, cause of action or liabilities of the Company or any other person arising from the Notes, the Note Agreement, the Guaranty, the Timber Note or the

Collateral Documents or any other Obligation of the Company or any other person whatsoever related thereto.

7.      Settlement of Existing Event of Default.   The Company, Noteholders and Collateral Agent agree that (a) interest at the Default Rate (2% per annum above the rate of interest provided for in the Notes) for the period from April 16, 2009 (the date of the Event of Default) to the date of maturity shall be accruing and due and payable at stated maturity of the Notes unless a majority of Noteholders have requested earlier payment of all or a portion thereof on a pro rata basis (*"Requested Payment"*) and provided funds sufficient to pay such Requested Payment of accrued Default Rate interest are held by the Collateral Agent as well as funds sufficient to pay any and all other obligations that are due and payable at that time, (b) the Noteholders holding at least a majority in aggregate principal amount of the Notes (the *"Majority Noteholders"*) may direct payment of any funds held by the Collateral Agent at any time prior to maturity to make the Requested Payment, provided there are sufficient funds held by the Collateral Agent to make such Requested Payment and pay any and all other Obligations due and (c) notwithstanding this Settlement Agreement, the Collateral Agent shall continue to pay scheduled non-default interest and principal and expenses as provided for in the Notes and Note Agreement.

8.      Fees and Expenses.  To further resolve the issue of the fees and expenses of the Collateral Agent and the Noteholders, the Company, the Noteholders and Collateral Agent agreed that in recognition that all cash flows, recoveries and rights to payment under the underlying Timber Note, Letter of Credit and all other Pledged Collateral are pledged to the Collateral Agent for the benefit of Noteholders, in order to resolve the obligations to pay the

Noteholders the principal amount outstanding on the Notes plus all accrued and unpaid interest on the Notes, including interest at the Default Rate, due to the Existing Event of Default (subject to the Make-Whole Claim Reservation of Rights) and fees and expenses incurred by reason of the Existing Event of Default and the obligation to pay to the Noteholders and the Collateral Agent all of their fees and expenses (the *"Collateral Trust Expenses"*), including attorneys fees and the ongoing fees of Lord incurred by reason of the Guarantor's default under the Notes and Note Agreement and the Guarantor's transfer of the ownership interest in the Company to Lord and Lord's ongoing fees, expenses and charges (*"Third-Party Expenses"*), the foregoing shall be resolved by acknowledgment that the Collateral Trust Expenses, including Third-Party Expenses, shall be due and payable from the cash flow from the underlying Promissory Note held by the Collateral Agent and the other Pledged Collateral. Since the Collateral Trust Expenses are paid from Pledged Collateral, it will not be necessary for the Collateral Agent, Noteholders, Lord or their counsel to file fee applications or make any other submission in the Bankruptcy Case, and they shall be paid pursuant to the terms of the Note Agreement and Collateral Agency Agreement and as directed by the Noteholders. The Third-Party Expenses shall be paid before any other Collateral Trust Expenses, which shall be paid before any payment to the Noteholders.

9.     Limitation on Bowater's Responsibilities. Bowater shall after the date of the Court Order approving this Settlement Agreement and the effective transfer of the membership interest in the Company from Bowater to Lord have no responsibility, liability or obligation for the Company or any action of the Company subject to the Make-Whole Claim Reservation of Rights. Bowater is not responsible for, shall have no liability for nor does it join in or make the

statements, agreements or affirmations of the Company contained in paragraphs 4, 5, 6, 7 and 8 above.

10. Execution of this Agreement by Lord. Lord shall execute this Settlement Agreement on behalf of the Company immediately after the entry of the Court Order authorizing and effectuating the transfer of the membership interest in the Company to Lord.

11. Approval of Compromise. Within 5 days of the date of execution hereof, Bowater shall serve on all parties required to be served, and file with the Bankruptcy Court, a notice of its intent to seek court approval of this Agreement and shall use reasonable best efforts to have this Agreement approved pursuant to Bankruptcy Rule 9019, which shall be in form and substance acceptable to the Parties.

12. Successors and Assigns. This Agreement shall bind and inure to the benefit of the Parties and their respective successors and assigns; *provided, however,* that the Company may not assign this Agreement or any of its rights and duties or obligations hereunder without the prior written consent of the Noteholders.

13. No Waiver. No consent or waiver under this Agreement shall be effective unless made in writing and signed by the Party consenting or waiving. No waiver of any breach or default shall be deemed a waiver of any breach or default thereafter occurring.

14. Controlling Law. This Agreement and any instrument or agreement executed in connection with this Agreement shall be governed and construed under the internal laws of the State of New York.

15.     Neutral Construction.  Each of the Parties has been involved in the negotiation, review and execution of this Agreement and each has had the opportunity to receive independent legal advice from an attorney or attorneys of its choice with respect to the advisability of the making and execution of this Agreement.  In the event of any dispute or controversy regarding this Agreement, the Parties shall be considered to be the joint authors of this Agreement and no provision of this Agreement shall be interpreted against a Party because of authorship.

16.     Severability.  In the event that any provision or portion of this Agreement is held to be unenforceable or invalid by any court of competent jurisdiction the validity and enforceability of the remaining provisions or portions thereof shall not be affected thereby.

17.     Authority.  Each individual executing this Agreement hereby severally represents and warrants to each person so signing (and to each other entity for which another person may be signing) that he or she has been duly authorized to execute and deliver this Agreement in the capacity of the person or entity set forth for which he or she signs.

18.     Execution In Counterparts.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.   A signature by facsimile transmission or other electronic means that allows the identity of the signer to be reasonably confirmed shall be as good and binding as an original signature.

19.     Captions.  The captions contained in this Agreement are for the convenience of the Parties and shall not be deemed or construed as in any way limiting or extending the language of the provisions to which said captions may refer.

20.     No Third Party Beneficiaries.  Nothing contained in the Agreement is intended to nor shall it be construed or deemed to confer any rights, powers or privileges on any person or legal entity other than the Noteholders, the Debtor and Lord and any successor-in-interest to any of them.

21.     Further Assurances.  Each Party shall promptly execute such other documents and take all other action as may reasonably be requested by the other Party to implement the provisions of or recognize each other's rights under this Agreement or the Note Agreement, the Notes or other Collateral Documents.

**SIGNATURES TO FOLLOW**

**SETTLEMENT AGREEMENT**
**[SALUDA]**

This Settlement Agreement (*"Agreement"*) is dated as of _____, 2010 by and between Bowater Saluda Note Holdings LLC, a Delaware Limited Liability Company (*"Company"* or *"Saluda"*), Bowater Incorporated, a Delaware corporation (*"Bowater"*) now a Debtor in the Chapter 11 Case pending in the United States Bankruptcy Court for the District of Delaware, Case No. 09-11296 (KSC) (the *"Bankruptcy Case"*), each of the holders of Notes identified on the signature pages hereto (the *"Noteholders"*), and The Bank of New York Mellon Trust Company, N.A., a New York banking corporation, in its capacity as collateral agent for the holders of the Notes (in such capacity, the *"Collateral Agent"*; the Company, Bowater, the Noteholders and the Collateral Agent are hereinafter referred to collectively as the *"Parties"*). Capitalized terms used and not otherwise defined in this Agreement shall have the meaning ascribed to such terms in that certain Note Purchase Agreement dated as of March 28, 2002 between the Debtor and the Noteholders (the *"Note Agreement"*).

**RECITALS**

A.     Whereas, on January \_\_, 2002, Bowater sold certain timberlands to Knightwood Holdings 1 LLC, Knightwood Holdings 2 LLC, Knightwood Holdings 3 LLC, Knightwood Holdings 4 LLC, Knightwood Holdings 5 LLC and Knightwood Holdings 6 LLC (collectively, the *"Purchasers"*) in exchange for $5,170,000 in cash and six separate promissory notes executed by each Purchaser in favor of Bowater, such promissory notes in the aggregate principal amount of $99,160,000 (the *"Timber Notes"*), each bearing interest at the rate of 6.37% per annum, secured by a separate irrevocable standby letter of credit, such letters of credit in the

aggregate stated amount of $102,751,276 issued by Wachovia Bank, N.A. (collectively, the *"Letters of Credit"*), and the principal amount of which in each case is payable in a single installment on January 15, 2017 (the *"Timberland Sales Transaction"*).

B.     Whereas, following the closing of the Timberland Sales Transaction, Bowater formed the Company as a qualified special purpose entity (*"QSPE"*) with Bowater as the sole member and contributed the Timber Notes and Letters of Credit to the capital of the Company.

C.     Whereas, on March 28, 2002, following the contribution of the Timber Notes and the Letters of Credit to the capital of the Company, the Company issued $89,200,000 principal amount of its 6.81% Senior Secured Notes due February 15, 2017 (the *"Notes"*), secured by a pledge of the Timber Notes and the Letters of Credit to the Noteholders.  In exchange for an upfront payment from the sale of the Notes, the Company pledged, among other things, the Timber Notes and Letters of Credit as collateral to the Collateral Agent, for the benefit of the Noteholders, and agreed to pay the income received from the issuer of the Timber Notes to the Noteholders to the extent necessary to pay scheduled principal and interest on the Notes and all other Obligations (as defined herein) due thereon.

D.     Whereas, in connection with the transactions contemplated by the Note Agreement, Bowater agreed to guaranty payment of the Make-Whole Amount as defined in the Note Agreement up to an amount equal to 10% of the aggregate outstanding principal amount of the Notes pursuant to a Limited Guaranty dated March 28, 2002 executed in favor of the Collateral Agent (*"Make-Whole Guaranty"*). The Guarantor's interest in the Company consists

principally of its membership interest in the Company which constitutes 100% of the outstanding membership interests in the Company.

E.     Whereas, Bowater continues to be the sole member of the Company.

F.     Whereas, The Bank of New York Mellon Trust Company, N.A. has been appointed Collateral Agent under the Collateral Agency Agreement and in this capacity is a party to the Pledge Agreement.

G.     Whereas, on April 16, 2009, Bowater and certain of its Affiliates, but not the Company, filed voluntary petitions (the *"Petition"*) under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (*"Bankruptcy Case"*) and certain of its Affiliates sought creditor protection under the Companies' Creditors Arrangement Act (Canada) with the Superior Court of Quebec in Canada.

H.     Whereas, under Section 11(f) of the Note Agreement, the filing of the Petition by Bowater in the Bankruptcy Case constitutes an Event of Default under the Note Agreement (the *"Existing Event of Default"*).

I.     Whereas, the Note Agreement provides that, if an Event of Default occurs under Section 11(f), the Notes are automatically accelerated as of the date of such Event of Default under Section 12.1 of the Note Agreement and become immediately due and payable and default interest at the then current rate of interest applicable to the Notes plus 2% per annum (the *"Default Rate"*) accrues on the Notes.

J.    Whereas, notwithstanding the acceleration of the Notes, neither the Company, the Collateral Agent nor the holders of the Notes are entitled to accelerate the repayment of the Timber Notes nor to draw upon the Letters of Credit for the repayment of any principal on the Notes prior to the maturity of the Timber Notes.

K.    Whereas, since the Company has no other assets other than the Timber Notes and its interest in the Letters of Credit pledged as security therefor, the Collateral Agent and the Noteholders will be unable to collect any payments on the Notes except as payments are made on the Timber Notes.

L.    Whereas, the payments made under the Timber Notes are expected be sufficient to pay the interest on the Notes at the non-Default Rate plus all or a portion of additional interest payable on the Notes by reason of the application of the Default Rate thereon and, upon the maturity of the Timber Notes, the principal amount of the Notes.

M.    Whereas, the Note Agreement provides that, if an Event of Default occurs under Section 11(f), the holders of the Notes are entitled to receive the Make-Whole Amount, but the Company and Bowater believe that payment of the Make-Whole Amount, which is intended to compensate the holders of the Notes for income lost due to the prepayment of the Notes, would represent a double recovery for the holders of the Notes since the principal amount of the Notes will not be prepaid due to the inability to accelerate the principal amount of the Timber Notes. The Noteholders and the Collateral Agent dispute this and assert that, under Sections 11(f) and 12.1 of the Note Agreement, the Notes are automatically accelerated as of the date of such Event of Default, are immediately due and payable and the Noteholders are also automatically entitled

to payment of the Make-Whole Amount and Default Interest until all Obligations under the Note Agreement are paid in full.

N. Whereas, the Company and Bowater acknowledge the pendency of the Existing Event of Default, the automatic acceleration of all principal of $89,200,000 and accrued interest due on the Notes and the Noteholders' right to receive interest at the Default Rate.

O. Whereas, as a result of the imposition of the default rate of interest on the Notes, Bowater has no equity remaining in the Company.

P. Whereas, the Company acknowledges that the Collateral Agent holds a lien on and security interest in the Knightwood Holdings Note Instruments, including the Letters of Credit, and the other collateral pledged as defined and described in and pursuant to the Pledge Agreement (the *"Pledged Collateral"*), including but not limited to the Collateral Accounts.

Q. Whereas, the Noteholders hold a majority in principal amount of the outstanding Notes.

R. Whereas, the Noteholders, the Collateral Agent, the Company and Bowater (subject to the approval of the Court in the Bankruptcy Case) wish to settle all disputes between the parties by *inter alia* (i) Bowater transferring, at the request of the Noteholders, to Lord Securities Corporation or any entity designated by it to hold the ownership interest (*"Lord"*) the membership interest in the Company, and (ii) agreeing that this Agreement shall be without prejudice to the right (a) of the Collateral Agent and/or the holders of the Notes to pursue a claim against Bowater in the Bankruptcy Case with respect to the Make-Whole Guaranty or (b) the

right of Bowater to contest any claim under the Make-Whole Guaranty by the Collateral Agent or the holder of any Note, all rights, claims, obligations, defenses, counterclaims and causes of action with respect to the Make-Whole Guaranty and the Make-Whole Amount being hereby reserved by the Parties (the *"Make-Whole Claim Reservation of Rights"*).

S.    Whereas, the Parties, through a series of good faith negotiations, reached agreements with respect to the resolution of all disputes with respect to these matters and now desire to document the understandings among them.

## AGREEMENT

Now therefore, in consideration of the promises and mutual agreements set forth herein and for other good and valuable consideration between the parties, including the promises and undertakings recited therein, the receipt of which is hereby acknowledged, and in the case of Bowater, subject to the approval of the Court in the Bankruptcy Case, the parties hereby agree as follows:

1.    Recitals. Each party acknowledges that each of the Recitals set forth above in this Agreement is true and correct to the best of their information, knowledge and belief as of the date hereof.

2.    Court Approval. This Agreement is subject to the entry in the Bankruptcy Case of an enforceable order of the Bankruptcy Court approving the same after appropriate notice and opportunity for hearing in accordance with the Bankruptcy Code Rule 9019 of the Federal Rules of Bankruptcy Procedure and any applicable Local Rules of the Bankruptcy Court prior to the Effective Date of any Plan of Reorganization of Bowater. The Court Order shall authorize and

approve the transfer, conveyance and assignment of all of the membership interests in the Company held by Bowater to Lord, free and clear of any lien, claim or encumbrance of any kind, with all powers, rights and privileges of ownership of the Company attendant thereto. Upon execution of this Agreement, all of the parties shall cooperate with each other to expeditiously seek entry of such an order.

3.      Reservation of Rights.  Bowater, the Company, the Noteholders and Collateral Agent agree to the Make-Whole Claim Reservation of Rights.  The Collateral Agent and the Noteholders acknowledge that Bowater has no obligation or liability with respect to the Notes, the Note Agreement or any of the other instruments, documents and agreements executed pursuant thereto or in connection therewith except as set forth in the Make-Whole Guaranty.

4.      Transfer of Guarantor's Interest in the Company.  Subject to, and effective upon the entry of, the Order of the Bankruptcy Court approving this Settlement Agreement, Bowater hereby transfers, conveys and assigns all right, title and interest of Bowater in and to its membership interest in the Company (which interest constitutes 100% of the membership interests in the Company) to Lord without recourse, warranty or representation of any kind, express or implied, other than Bowater is the legal and beneficial owner of such membership interest.  Bowater shall execute documents which are mutually acceptable to the Parties evidencing the transfer of Bowater's interest in the Company to Lord.  Subject to the Make-Whole Claim Reservation of Rights, Bowater shall not assert or claim any rights to any future cash flow from the Pledged Collateral, including the Letter of Credit.  Lord shall not be liable for any claims, causes of action or liabilities of Bowater arising from the Notes, the Note Agreement,

the Guaranty, the Timber Note or the Collateral Documents or any other obligation of Bowater whatsoever related thereto.

5.    Reaffirmation of Obligation by the Company.  The Company reaffirms:

(a)    the Collateral Agent's security interest in the Knightwood Holdings Note Instruments and other Pledged Collateral;

(b)    the obligations of the Company under the Note Agreement and Notes, including, without limitation, principal and interest on the Notes, including at the Default Rate, payment of fees and expenses as provided for in the Note Agreement and subject to the Make-Whole Claim Reservation of Rights (*"Obligations"*); and

(c)    its prior pledge and assignment to the Collateral Agent for the benefit of the Noteholders, pursuant to the Pledge Agreement, of a first priority security interest in the following:

(i)    the Pledged Note Instruments (as defined in the Pledge Agreement) and the instruments or securities evidencing such Pledged Note Instruments, and all rights relating thereto (including without limitation, all rights under the Letters of Credit and rights to exercise remedies, make drawings on the Letters of Credit, grant waivers and consent to amendments thereunder), and all interest, cash, instruments and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Note Instruments;

(ii)    all rights of Pledgor under the Knightwood Holdings Note Instrument Assignment and Contribution Agreement;

(iii)   the Liquid Collateral (as defined in the Pledge Agreement); and

(iv)   to the extent not covered by clauses (i) though (iii) above, all proceeds of any or all of the foregoing Pledged Collateral.  For purposes of this Agreement, the term "proceeds" includes whatever is receivable or received when Pledged Collateral or proceeds are sold, exchanged, collected or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, proceeds of any indemnity or guaranty payable to Pledgor or Collateral Agent from time to time with respect to any of the Pledged Collateral.

6.    Further Company Reaffirmation.  The Company irrevocably affirms all of its covenants, agreements and duties under the Note Agreement and the Notes and all documents and agreements referred to in the Note Agreement, including, but not limited to, the Obligations. The Company agrees it has no defense, right of setoff, counterclaim or claim of recoupment that it can assert to the payment and performance of the Obligations under the Note Agreement and the Notes and waives any and all rights to any future cash flow from the Pledged Note Instruments, including the Letters of Credit, or any other Pledged Collateral.  The Company acknowledges the Collateral Agent and Noteholders have all rights to the cash flow, direct payments out of the Pledged Collateral, including but not limited to payments on the Timber Notes and Collateral Accounts, and the ability to draw on the Letters of Credit and exercise other remedies if necessary.  Given the Event of Default under the Note Agreement and this Settlement

Agreement, the Company shall not assert or claim any rights to any future cash flow from the Pledged Collateral, including the Letters of Credit, and acknowledges that Lord or any successor to it shall not be liable for any claims, cause of action or liabilities of the Company or any other person arising from the Notes, the Note Agreement, the Guaranty, the Timber Notes or the Collateral Documents or any other Obligation of the Company or any other person whatsoever related thereto.

7.     Settlement of Existing Event of Default.   The Company, Noteholders and Collateral Agent agree that (a) interest at the Default Rate (2% per annum above the rate of interest provided for in the Notes) for the period from April 16, 2009 (the date of the Event of Default) to the date of maturity shall be accruing and due and payable at stated maturity of the Notes unless a majority of Noteholders have requested earlier payment of all or a portion thereof on a pro rata basis (*"Requested Payment"*) and provided funds sufficient to pay such Requested Payment of accrued Default Rate interest are held by the Collateral Agent as well as funds sufficient to pay any and all other obligations that are due and payable at that time, (b) the Noteholders holding at least a majority in aggregate principal amount of the Notes (the *"Majority Noteholders"*) may direct payment of any funds held by the Collateral Agent at any time prior to maturity to make the Requested Payment, provided there are sufficient funds held by the Collateral Agent to make such Requested Payment and pay any and all other Obligations due and (c) notwithstanding this Settlement Agreement, the Collateral Agent shall continue to pay scheduled non-default interest and principal and expenses as provided for in the Notes and Note Agreement.

8.     Fees and Expenses.  To further resolve the issue of the fees and expenses of the Collateral Agent and the Noteholders, the Company, the Noteholders and Collateral Agent agreed that in recognition that all cash flows, recoveries and rights to payment under the underlying Timber Notes, Letters of Credit and all other Pledged Collateral are pledged to the Collateral Agent for the benefit of Noteholders, in order to resolve the obligations to pay the Noteholders the principal amount outstanding on the Notes plus all accrued and unpaid interest on the Notes, including interest at the Default Rate, due to the Existing Event of Default (subject to the Make-Whole Claim Reservation of Rights) and fees and expenses incurred by reason of the Existing Event of Default and the obligation to pay to the Noteholders and the Collateral Agent all of their fees and expenses (the *"Collateral Trust Expenses"*), including attorneys fees and the ongoing fees of Lord incurred by reason of the Guarantor's default under the Notes and Note Agreement and the Guarantor's transfer of the ownership interest in the Company to Lord and Lord's ongoing fees, expenses and charges (*"Third-Party Expenses"*), the foregoing shall be resolved by acknowledgment that the Collateral Trust Expenses, including Third-Party Expenses, shall be due and payable from the cash flow from the underlying Promissory Note held by the Collateral Agent and the other Pledged Collateral.  Since the Collateral Trust Expenses are paid from Pledged Collateral, it will not be necessary for the Collateral Agent, Noteholders, Lord or their counsel to file fee applications or make any other submission in the Bankruptcy Case, and they shall be paid pursuant to the terms of the Note Agreement and Collateral Agency Agreement and as directed by the Noteholders.  The Third-Party Expenses shall be paid before any other Collateral Trust Expenses, which shall be paid before any payment to the Noteholders.

9. **Limitation on Bowater's Responsibilities.** Bowater shall after the date of the Court Order approving this Settlement Agreement and the effective transfer of the membership interest in the Company from Bowater to Lord have no responsibility, liability or obligation for the Company or any action of the Company subject to the Make-Whole Claim Reservation of Rights. Bowater is not responsible for, shall have no liability for nor does it join in or make the statements, agreements or affirmations of the Company contained in paragraphs 4, 5, 6, 7 and 8 above.

10. **Execution of this Agreement by Lord.** Lord shall execute this Settlement Agreement on behalf of the Company immediately after the entry of the Court Order authorizing and effectuating the transfer of the membership interest in the Company to Lord.

11. **Approval of Compromise.** Within 5 days of the date of execution hereof, Bowater shall serve on all parties required to be served, and file with the Bankruptcy Court, a notice of its intent to seek court approval of this Agreement and shall use reasonable best efforts to have this Agreement approved pursuant to Bankruptcy Rule 9019, which shall be in form and substance acceptable to the Parties.

12. **Successors and Assigns.** This Agreement shall bind and inure to the benefit of the Parties and their respective successors and assigns; *provided, however,* that the Company may not assign this Agreement or any of its rights and duties or obligations hereunder without the prior written consent of the Noteholders.

13.     No Waiver.  No consent or waiver under this Agreement shall be effective unless made in writing and signed by the Party consenting or waiving.  No waiver of any breach or default shall be deemed a waiver of any breach or default thereafter occurring.

14.     Controlling Law.  This Agreement and any instrument or agreement executed in connection with this Agreement shall be governed and construed under the internal laws of the State of New York.

15.     Neutral Construction.  Each of the Parties has been involved in the negotiation, review and execution of this Agreement and each has had the opportunity to receive independent legal advice from an attorney or attorneys of its choice with respect to the advisability of the making and execution of this Agreement.  In the event of any dispute or controversy regarding this Agreement, the Parties shall be considered to be the joint authors of this Agreement and no provision of this Agreement shall be interpreted against a Party because of authorship.

16.     Severability.  In the event that any provision or portion of this Agreement is held to be unenforceable or invalid by any court of competent jurisdiction the validity and enforceability of the remaining provisions or portions thereof shall not be affected thereby.

17.     Authority.  Each individual executing this Agreement hereby severally represents and warrants to each person so signing (and to each other entity for which another person may be signing) that he or she has been duly authorized to execute and deliver this Agreement in the capacity of the person or entity set forth for which he or she signs.

18. **Execution In Counterparts.** This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. A signature by facsimile transmission or other electronic means that allows the identity of the signer to be reasonably confirmed shall be as good and binding as an original signature.

19. **Captions.** The captions contained in this Agreement are for the convenience of the Parties and shall not be deemed or construed as in any way limiting or extending the language of the provisions to which said captions may refer.

20. **No Third Party Beneficiaries.** Nothing contained in the Agreement is intended to nor shall it be construed or deemed to confer any rights, powers or privileges on any person or legal entity other than the Noteholders, the Debtor and Lord and any successor-in-interest to any of them.

21. **Further Assurances.** Each Party shall promptly execute such other documents and take all other action as may reasonably be requested by the other Party to implement the provisions of or recognize each other's rights under this Agreement or the Note Agreement, the Notes or other Collateral Documents.

**SIGNATURES TO FOLLOW**
